JUDGE WOOD
DELIVERED THE OPINION OP THE COURT.4
On the 6th day of August, 1831, Gen. James Taylor, of Newport, commenced his suit in the Campbell circuit court, against the executors, children, and devisees of Taylor Berry, deceased, for the purpose of recovering a debt alleged to have been due from said Taylor Berry to the complainant.
It appears that Taylor Berry, a nephew of Gen. Taylor, at an early period in the history of Missouri, whilst indeed it was still one of the territories of the United States, emigrated from Kentucky to that territory.
In the original bill exhibited by Gen. Taylor in the suit aforesaid, it is alleged that, in the year 1817, he and Taylor Berry “ entered into a partnership for the purchase of certain lands in the then territory of Missouri.” The terms of the *606 partnership were that Taylor “was to furnish the funds” and Berry “was to transact the business,” “they were to be equal partners in the lands purchased, and the profits made upon them, and Berry was to refund to Taylor the one half of the money advanced by him.”
The indebtedness, upon which the suit commenced in 1831 was based, was alleged to have grown out of advancements made by Taylor to Berry, under said partnership agreement.
In 1824 Taylor Berry died from the effects of a wound received in a duel.
Gen. Taylor brought his suit against John Miller and Edmund T. Christy, executors of the will of said Taylor Berry, and Mary Anne and Martha Eliza, devisees of said Berry, Frances Wash, child and heir of Fanny W. Wash, deceased, who was the widow and also a devisee of Berry, and Robert Wash, with whom said widow had intermarried, and father of said Frances Wash. The defendants were all residents of the state of Missouri.
Before his death, Berry made and published a will, which was proved and admitted to record in the proper court in the county of Howard, where he resided. By his will he devised his lands to his wife and three infant daughters, one of whom died soon after her father’s death, an infant without issue. Letters testamentary were granted to said Miller and Christy, two of the executors nominated by the will, each of whom was authorized to resign and appoint his successor. And it is alleged, and in fact shown by the record, that they did after-wards resign, and Robert Wash was appointed administrator.
The purpose of the suit was to establish the aforesaid demand of Taylor against the representatives of Berry, and to subject to its payment their interest in two tracts of land, situated in the county of Campbell, where the suit was brought.
The bill contained an allegation that the defendants owned no personal estate in Kentucky sufficient to satisfy the complainant’s debt.
Pending the suit, the two infant daughters of Taylor Berry were married — Mary Anne to H. S. Coxe, and Eliza to D. D. Mitchell. These marriages were suggested and the husbands, *607 Coxe and Mitchell, made defendants by supplemental and amended bills.
During the progress of the suit an order of publication was entered and published as then required by law. In addition to this, the defendants were all served with copies of the original, amended, and supplemental bills filed by the complainant.
The defendants, Miller and Christy, as executors, filed a demurrer, which was sustained as to them in April, 1840. Guardians ad litem were appointed for the infant defendants to the suit, and defense made by them.
On the 7th day of October, 1842, an interlocutory decree was rendered by the circuit court, ascertaining and establishing the demand asserted by the complainant, and giving day for its payment. On the 5th of April, 1843, a final decree was rendered, by which a sale of the land in Campbell, sought to be subjected in the action, was directed for the payment of the debt as fixed by the interlocutory decree, the same not having been paid as therein directed. Under this decree a sale of the land was made, and the complainant became the purchaser.
In June, 1844, said decree was reversed by this court upon the appeal of the defendants. In October following the mandate of reversal was entered in the circuit court, the sale previously made was set aside, and a decree rendered in conformity with the opinion and mandate of this court.
Under this decree a second sale of the land in Campbell was made in November, 1844. At this sale James T. Berry, one of the appellees, who had been a guardian acl litem of Mrs. Coxe and Mrs. Mitchell, became the purchaser, at the prices and upon the terms mentioned in the commissioner’s report.- At the next term of the court in April, 1845, the sale to Berry was reported by the commissioner to the circuit court,'and was confirmed, and a deed to the land which had been sold was made to him.
It further appears that Coxe, the first husband of Mary Anne, who was one of the daughters of Taylor Berry, died in 1850.
She remained a widow until 1853, when she intermarried with William A. Pendleton, whose wife she now is. Martha Eliza Mitchell, the other daughter of Taylor Berry, died in *608 April, 1854, leaving six children. Mrs. Pendleton was born 8th November, 1818, Mrs. Mitchell 23d September, 1823.
On the 3d day of February, 1857, this action was commenced in the Campbell circuit court by Thomas Gant and John Wick-ham, (said to be trustees for Mrs. Pendleton,) William A. Pen-dleton, and Mary Anne, his wife, and David D. Mitchell and his six children aforesaid, against James Taylor as executor of the last will of his father, Gen. James Taylor, deceased, and James T. Berry, the purchaser of the land at the sale under Taylor’s decree.
In its nature it is essentially a bill of review. Its object is to review the proceedings in the former suit, to impeach the decree in that suit for errors patent on the record, and on account of matters alleged dehors the record, and to vacate and set aside the sale made under said decree; or if that cannot be done, to hold the defendant Berry as a trustee, and to compel him to account for the proceeds of all sales of the land, to the plaintiffs.
It is alleged that the decree was procured by fraud; that the conduct of James T. Berry, in the defense of the suit as guardian ad, litem, was either fraudulent or grossly negligent, perhaps both; that he bought the land at greatly less than its value; that in fact he made the purchase for the benefit of said Mary Anne Coxe and Martha Mitchell, but afterwards for some cause determined to hold it for himself. And it is insisted upon the part of the plaintiffs that Berry, being guardian ad litem for said Mary Anne and Martha, whilst infant defendants, had no right to buy at the commissioner’s sale, and that his purchase inured to the benefit of said Mary Anne and Martha only.
Upon the part of the defendants it is denied that there is error apparent upon the face of the record of Taylor against Berry’s executors, devisees, &c.; and if there be any error at all, certainly none that would affect the sale under the decree. And again, if there is error in that record, it is cured by former proceedings, and barred by lapse of time and the statute of limitation. It is denied that there is any matter outside of the record sufficient to authorize a review of the former proceed *609 ings, and an impeachment of the decree. Every allegation of fraud, either against Gen. Taylor or James T. Berry, no matter to what the alleged fraud may relate, is expressly denied.
Berry denies that he bought the land for the persons whose guardian ad litem he had been; denies that there was fraud in the sale or purchase; insists that he bought it for himself and in good faith; that he was not forbidden,by either law or good morals, to make the purchase; and resists the relief sought by the plaintiffs, in either and both of the forms in which they have asked for it.
The first question to be considered is, what effect have lapse of time and the statute of limitation upon this controversy?
It has been held by this court that a bill of review for errors apparent on the face of the decree, and a writ of error prosecuted to reverse a decree, are analogous and equivalent remedies ; and that the remedy by bill of review for such errors is barred whenever the time for a writ of error has passed. (Benson’s heirs vs. Outten’s heirs, 5 J. J. Mar., 610; Bleight, &c., vs. McIlvoy, &c., 4 Mon., 142; Green’s heirs vs., Breckinridge’s heirs, Ib., 541.)
In Bleight and others against Mcllvoy and others (supra) it was held further, as a corollary from the proposition stated just above, that an affirmance of a decree in this court is a bar against a bill of review for any errors which were or might have been assigned here.
This effect given to the decision of this court would be precisely the same whether it were an affirmance or reversal. Certainly it is so in a case like this, where, in addition to the reversal, the cause was remanded to the circuit court with directions to render a decree in favor of the complainant. This could not have been done if any error had been left in the record unconsidered by the court. (Brewer vs. Bowman, 3 J. J. Mar., 492.)
No question as to an error upon the face of a decree can be made or presented by a bill of review, but what might be made before this court upon a writ of error or appeal.
If, then, the present appellants failed to make the questions and points which they might have made when the appeal in *610 the case of Taylor against Berry’s devisees, &c., was before this court, they are barred from making them afterward, either in this court or by bill of review upon the face of the former decree in the circuit court. As to all errors which existed prior to the decision upon that appeal, plaintiffs are barred by that decision.
Upon the facts presented in the foregoing statement, needless here to be repeated, showing the ages of the devisees of Taylor Berry, the disabilities under which some of the parties at different times labored, when those disabilities were removed, et cetera, it is the opinion of the court, following its decisions heretofore made, that the plaintiffs are all barred of the remedy of which they have sought to avail themselves in this action, so far as the same is based upon alleged errors apparent upon the face of the record of Taylor against Berry’s devisees and others, whether committed before or since the appeal and reversal aforesaid.
Mrs. Pendleton was about twenty-six years of age at the time of the decree and sale of 1844. True, she was a married woman then. But in 1850 she became a feme sole, and was married the second time before this action was brought. As her second disability cannot be added to the first, she is manifestly barred.
Mrs. Mitchell died in April, 1844. More than two years elapsed between her death and the commencement of this action in February, 1857. The disability of the children cannot be added to that of the mother. They are therefore barred.
D. D. Mitchell being of full age, and under no disability when the decree was rendered, was barred beyond all doubt. And according to the decision in Holliday and others vs. Hickman, (6 Mon., 378,) it would seem that all were barred.
In any view which can be taken of the facts bearing upon this point of the case, we think this action was barred by limitation, to the extent indicated above.
We come next to the consideration of the alleged matters, dehors the record, relied upon for the impeachment of the decree.
Before proceeding with the investigation of this branch of the case, it is proper that we advert briefly to the doctrine in *611 reference to bills of review, and state the leading principles by which they are controlled.
Bills of review may be brought upon errors of law appearing in the body of the decree itself, or upon discovery of new matter. (Mitford's Equity Pleading, 127-8.) It is necessary that a bill of the latter class contain an allegation that “ the new matter could not be produced or used by the party claiming the benefit of it at the time when the decree was made.” And the court must be “ satisfied that the new matter is relevant and material, and such as might probably have occasioned a different determination.” Otherwise, the court will not allow the bill. (Mitford,p. 129.) “The matter discovered must be such as was not known in the former case, or evidence of a permanent and unerring nature to points before in issue.” (Edmondson vs. Moseby's heirs, 4 J. J. Mar., 500 ; Brunk vs. Means, 11 B. Mon., 220.)
And in Benson’s heirs against Outten’s heirs, {supra,) it was said by this court that “ bills of review are of two kinds. The one is founded on matter discovered since the decree attempted to be reviewed was made, and consequently not put in issue in the former suit; or on evidence of a permanent and unerring nature, applicable to points which were then in issue.”
It seems to us that it may well be doubted whether the petition in this case contains any sufficient allegation that new matter has been discovered “ which could not have been pro* duced and used by the parties now claiming the benefit of it, at the time when the former decree was made.”
The petition does contain these allegations, to-wit: Said Gant and Wickham, trustees, and William A. Pendleton and said six infant plaintiffs, have no knowledge other than that derived from the information of others, which they now charge to be true, as to the matters herein stated, all which came to their knowledge within the last two months. And the said Mary Anne (Mrs. Pendleton) and David D. Mitchell had no knowledge, information, or belief of and concerning the facts herein stated until within the last two months, except they had notice of the claim, suit, and decree of Gen. Taylor; that the land had been sold and purchased by defendant Berry, and that *612 he purchased for the benefit of Mrs. Coxe and Mrs. Mitchell, but that afterwards, for a reason stated, he determined to hold the land for himself.
Now the matter chiefly relied upon by appellants, which was not produced and used in the suit of Taylor against Berry’s devisees and others, is the deed alleged to have, been made by Taylor Berry to his infant daughters in 1824, just before his duel, by which he conveyed to them the land in Campbell, which was sold under Gen. Taylor’s decree. If the allegations above mentioned, of want of knowledge and recent discovery, are considered in connection with other allegations of the petition, it is apparent that the existence of this deed was well known to all of the defendants to the suit of Taylor during its pendency.
In reference to said two tracts of land, it is alleged “ that they were known and used and held by said Mary Anne and Martha through their agents and friends, under the said deed' of conveyance from their father as purchasers, and not'as heirs or devisees, which fact was well known to their family and relations, and particularly said Gen. Taylor and James T. Berry, from the year 1824 to the sale and purchase thereof by said Berry as aforesaid.” And it is further alleged, in express terms, that said deed “was sent here in 1841 to be filed and used in the defense of said suit of Gen. Taylor.” It is not said by whom sent; but the natural inference is, that it was sent by the parties in interest who resided in Missouri, or some of them.
From all of these allegations, considered in connection, it must of necessity be inferred that the plaintiffs intended to allege, and do in fact only allege, that they had recently discovered that the deed was not filed and used in the defense of the suit of Gen. Taylor. The allegation then is, not that the new matter of defense has been recently discovered, but the fact that matter before known was not used in the defense of the suit has been lately ascertained. This falls short of the allegation required in a bill of review.
And the same may be said with equal propriety of another matter relied upon and often alluded to in argument, to-wit: that Robert Wash was the personal representative of Taylor *613 Berry, whilst the suit of Gen. Taylor was pending, the connection of Miller and Christy with Berry’s estate having terminated by their resignation, and the substitution of said Wash, as authorized and provided for by the will of Berry. It is not alleged to be a matter recently discovered, although it may be alleged that the plaintiffs did not know, until within two months before the commencement of their action, that these facts had not been made known to the court and used in the former suit.
Upon this part of the case it is proper that we consider, secondly, whether the new matter is such as “ would have produced a different decree,” in the words of this court in Brewer vs. Bowman, (supra,) or in the language of Milford, “ such as might probably have occasioned a different determination.” We do not think it was. If the matter now set up and relied upon as new matter had been known and used in the original suit of Taylor against Berry’s devisees and others, there is no reasonable probability that a different decree would have been in the end produced. The pleadings might have been changed, but we do not see that a different result would have been arrived at.
Unless a bill of review possessed the requisites which wé have just been considering, the court would not under the old practice have allowed the filing. This petition, however, was filed without the leave of the court. And we deem it now proper, in determining whether plaintiffs are entitled'to relief, to examine the petition, and ascertain if it possesses these requisites.
Having disposed of these points, we will consider the case in another of its aspects.
The petition is not only in the nature of a bill of review, which was not under the old system of equity pleading an original bill, but it also partakes of the character of an original bill to impeach the decree upon the ground that it was obtained by fraud.
Fraud in obtaining the decree is imputed to both the complainant in the original suit, Gen. Taylor, and James T. Berry, the guardian ad litem of Mrs. Goxe and Mrs. Mitchell. The allegations of fraud are numerous and made in different forms;
*614 but all, when carefully considered, will be found to relate to a very few matters.
1. It is alleged that the claim of Gen. Taylor against the estate of Taylor Berry was unjust and groundless, and of course known by Gen. Taylor to be so.
2. That the deed of the 21st day of August, 1824, from Taylor Berry to his children, was known to have existed by General Taylor and James Berry, and the existence of the deed fraudulently concealed from the court.
3. The fact that Wash was the personal representative of the estate of Taylor Berry was fraudulently concealed.
■There are allegations of fraud touching other matters, but these are the principal ones.
In regard to tlm first of these — Taylor’s claim against Berry’s estate — it may be remarked that its merits were the chief, if not the only, subject of investigation and litigation in that suit. There was a decision upon them by the circuit court and this court. And we have seen no reason, either in the record of the original suit or this, for supposing the claim to be fraudulent or unfounded. The fact that Taylor Berry executed to Gen. Taylor a deed immediately before his death conveying a tract of land, said to have been worth then two thousand dollars, and now worth twenty thousand dollars, upon no consideration whatever, unless there existed an indebtment from the former to the latter, furnishes a strong presumption that Taylor Berry knew that he was indebted to Gen. Taylor, on account of advances made in their partnership transactions. This deed Taylor rejected, and chose to rely upon his right to recover in Ms suit.
2. It is denied by both James Taylor, the executor of Gen. Taylor, and James T. Berry, that either had knowledge, during the pendency of the suit, of the existence of the deed aforesaid, from Taylor Berry to his children. In our opinion, there is a. complete failure to prove such knowlédge on the part of either. If they had no knowledge, of course there was no suppression or concealment, and no fraud in this regard. It is said that the deed was recorded in the Campbell county court in 1841. But its recordal was not constructive notice even, to any one.
*615 There was but a single witness to it, and it was never proved or acknowledged in such manner as to authorize its registra* . tion in Kentucky as a deed.
If, however, the facts of the case as to notice of the deed had been different, and knowledge of the deed had been brought home to Gen. Taylor by the proof, nevertheless he would not have been affected by the deed, for a very substantial reason* The deed was purely voluntary. It was therefore fraudulent and void as to antecedent creditors, of whom Gen. Taylor was one. [Cosby, etc., vs. Ross' adm'r, 3 J. J. Mar., 290; Lyne, etc., vs. Bank of Kentucky, 5 J. J. Mar., 555; Hanson vs. Buckner’s devisees and ex!or, 4 Dana, 251; Enders vs. Williams, Opinion Summer Term, 1858.) Had the deed been fully proved, and been introduced into the record, it could not have affected the decree.
3. Robert Wash was a defendant to the suit. It appeared from the exhibits that he was administrator of the estate of Taylor Berry after the resignation of Christy and Miller. The bare fact that he was not named in the pleadings in the fidu-cial character which he had acquired, is no evidence of fraud.
It is furthermore alleged, that the sale under Taylor’s decree . was made fraudulently.
Two facts are relied upon to sustain this allegation:
First. That the sale was made on the land; and Second. There were two bidders only present, the defendants in this action — one the son of complainant in the original suit, the other James T. Berry, the purchaser.
In regard to the first of these facts, it is necessary to say only that the decree of the circuit court directed the sale to be made r upon the premises, and such decree was authorized by the law as it then stood. There is nothing in the record to show that this direction as to the place of sale was given by the court at the instance either of Taylor or Berry; or that either could have expected to gain anything by having the sale made as directed.
As to the second of these facts, it is sufficient to say that the sale was advertised in accordance with the directions of the decree; the public had notice, and the opportunity of attending *616 the sale; no means were used by any one to prevent the attendance óf bidders, or to avoid competition in bidding; and it was not the fault of either the purchaser, or the party for whose benefit the sale was made, if no other bidders were present. That there were no others is not alone sufficient to prove the sale fraudulent.
Again, it is alleged that the land was sold for much less than its value. And this is relied upon to show fraud; and perhaps, also, as an independent ground of relief.
It is not necessary to encumber this opinion with a review of the evidence upon this point. Our conclusion, from an examination of this evidence, is, that the land sold for very nearly, if not quite, its full value. Certainly there was no such inadequacy of price as affords the slightest ground for an inference that the sale was fraudulent, or a pretext even for setting aside the sale. It is proved by James Taylor, who has no interest to uphold the sale, that it was fair, and for a full price. He is well informed as to the value of lands in that neighborhood at that time, and their value at this time, and gives facts to sustain the correctness of the opinion given by himself, in reference to the adequacy of the price paid by Berry. G. Daniel, the commissioner who made the sale, who has been for seventeen years the master commissioner of the Campbell circuit court, a man sixty-two years of age, and a well informed and respectable citizen, as we are authorized to assume, standing perfectly indifferent between these parties, states that the sale was fair, and that the land brought a fair price.
Every allegation of fraud contained in the petition is denied specifically, and we cannot see that one of them is proved.
Another ground for relief assumed by the appellants is, that Berry bought the land, not for himself, but for Mrs. Coxe and Mrs. Mitchell, and the effort is now made to hold the land not sold by him, and the proceeds of what has been sold in his hands, as trustee for appellants.
Berry denies expressly and positively that he made the purchase for Mrs. Coxe and Mrs. Mitchell. There is no proof tending to impeach this denial. Upon the other hand, the proof shows that he made the purchase for himself.
*617 It is shown by the evidence that Mrs. Coxe and Mrs. Mitchell were at the house of Berry, in Campbell county, after the purchase, and were doubtlessly informed of it. That D. D. Mitchell was informed of the sale soon after it was made, that James T. Berry was the purchaser, and of the character of his purchase, is not to be questioned. From his age, his intelligence, his position, and all connected with him, Col. Mitchell may be regarded as being at that time the head of the family of Taylor Berry, deceased. So regarding him, James T. Berry, in December, 1845, addressed him a letter, in which he proposed to sell to him (Mitchell) the property purchased by him (Berry) “under a decree of the Campbell circuit court, in favor of James Taylor against the heirs of Taylor Berry.” He offered to sell at what it cost him. Here we have in December, 1845, a distinct presentation to Col. Mitchell of the fact that Berry had bought the land, and that he held it for himself, coupled with an offer to him, as a member of the family, to let him have the property at the price for which it was sold at the sale. There is no concealment and no effort to procure an advance or profit upon the land. Col. Mitchell received-that letter, and in an answer dated St. Louis, January 22d, 1846, declined the proposition made to him in Berry’s letter.
We are impelled to the conclusion, by all the facts presented by the record, that James T. Berry acted in perfect good faith in the defense of the suit of Gen. Taylor, in the purchase of the property sold under the decree, and in all of his subsequent acts in reference thereto. There is no doubt that his purchase was regarded at the time as beneficial to the defendants in that suit.
The decision of this court in Simrall's heirs vs. Jacob, (14 B. Mon., 502,) is a pointed authority against disturbing a sale and purchase made under such circumstances as are presented by this record.
The only other ground for relief relied upon by appellants is, that the appellee, James T. Berrj’, was the guardian ad litem of Mrs. Coxe and Mrs. Mitchell, in the suit of Gen. Taylor against Berry’s devisees and others, and that for that reason he could not lawfully become the purchaser of their land at the sale, and hold the same for his own use.
*618 It is contended for the appellants, if the purchase by the guardian ad litem is not void, that at least they have the right to elect to treat him as a trustee, who holds the property for their use.
We recognize to its fullest extent and in all its force the salutary rule of equity which prohibits purchases by parties placed in a situation of trust or confidence with reference to the subject of pui’chase. Nor do we hold that it is confined to trustees or others who hold the legal title to the property to be sold, or to a particular class of persons, such as statutory guardians or trustees.
“It is a rule which applies universally to all who come within its principle, which principle is, that no party can be permitted to purchase an interest in property and hold it for his own benefit, where he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account and for his own individual use.” ( Van Epps vs. Van Epps, Paige's Chancery Reports, 9 vol., p. 241.)
But we are not prepared to admit that the rule applies to this case; nor that this guardian ad litem comes within the principle of the rule.
The duties of a guardian ad litem are limited to the particular suit, and he has none of the powers or liabilities of a permanent guardian. {Macpherson on Infants, p. 396.) When the guardian ad litem has been appointed, * * * * it is his duty to put in a defense. If the defense be improper, he will be liable to costs. (1 Daniett’s Chancery Practice, 233.) And no doubt if the defense were conducted by the guardian negligently, or in bad faith, he would be liable to the infant.
But the guardian ad litem has no concern with the person of the infant or his property. He has the custody or control of neither. Berry, by his appointment, was not placed in a position to enable him to acquire any undue influence over the infants, nor was he in a position of trust or confidence with reference to the property, which, after the termination of the suit, became the subject of his purchase. We do not see that he had any “ duty to perform in relation to the property which *619 was inconsistent- with the character of a purchaser on his own account and for his own individual use,” in the words of Chancellor Walworth, used in the case of Van Epps vs. Van Epps, (supra.)
In the case of Blackmore vs. Shelby, (8 Humphreys, 439,) it was held by the supreme court of Tennessee, where the estate of minors is sold under the decree of a court of competent jurisdiction, and a guardian (statutory) purchases fairly and without benefit to himself at the expense of his ward, that such purchase is valid. That was not a case, however, in which there was a contest between the guardian and his ward.
In Jackson vs. Woolsey (11 Johnson, 455) it was decided by the supreme court of New York, that a guardian ad litem, in a suit for partition of land, might become a purchaser at a sale made by a commissioner, pursuant to an order of the court. In delivering the opinion of the court in that case, Yates, justice, said: “ The guardian having purchased the premises does not affect the proceedings; nor can they on that account be deemed fraudulent. It was a public sale to the highest bidder, authorized by statute, and under the sanction and inspection of a court. Without circumstances of direct fraud, therefore, to support such an allegation, the deed is valid in law.”
But if it were admitted that the guardian ad litem was in the position of trustee, and came within the principle of the rule stated above, we do not think the plaintiffs in this action would be entitled to relief.
Where a cestui que trust desires to avoid a sale of his estate, at which the trustee has become the purchaser, he must apply to chancery in a reasonable time after he has knowledge of the facts which impeach the sale, or he will be presumed to have acquiesced; and reasonable time depends upon the circumstances of the case, and the sound discretion of the court. Acquiescence for a long time in an improper sale will disable a party from coming into a court of equity to set it aside. (White’s Equity Cases, pp. 158 and 168, and numerous cases there cited)
Under the circumstances of this particular case, an acqui *620 escence of twelve years is sufficient to disable the parties from coming into a court of equity to avoid the sale.
We do not perceive any ground to doubt that all of the defendants to the suit of Taylor against Berry’s devisees, etc., were apprised of the decree in that suit, and the sale under it, and that Berry was the purchaser immediately after the decree was rendered and sale made. This is rendered certain by the letter from Berry to Col. Mitchell and the answer thereto. There can be no doubt either that the defendants in that suit were well informed in reference to its prosecution and defense.
In December, 1845, the offer was made by Berry to Mitchell to sell him the land at the price for which it had been sold at the commissioner’s sale, and was rejected. It is proved that Mrs. Coxe and Mrs. Mitchell were both at the house of Berry not very long after the sale, and one at least was heard to converse upon that subject.
Berry, acting in good faith, has sold a considerable portion of the land, and has expended large sums of money for the enhancement of the value of the remainder.
In such a case a court of equity cannot deprive a purchaser of the benefit of his purchase.
To all that has been said maybe added the fact, that neither of the persons for whom Berry had been appointed guardian ad litem, was an infant at the time the decree was rendered. The proof shows that Mary Anne Coxe ceased to be an infant on the 8th November, 1839, and Martha Eliza Mitchell on the 23d September, 1844. The guardianship terminated with the infancy of said defendants. “ If an infant defendant comes of age before a decree has been made in the cause, he may obtain leave from the court to amend his answer, or put in a new one, and he may go into evidence in support of the new defense thus made.” (Macpherson on Infants, p. 409; 1 Daniell's Ch'y Practice, 237 ; Shields' heirs vs. Bryant, 2 Marshall, 344.)
In no aspect of the case can we see that there is error in the judgment of the circuit court.
Wherefore, said judgment is affirmed.