Jacks, et al. vs. Adair et al.

---

## JACKS ET AL. VS. ADAIR ET AL.

1. NEW TRIAL: *Limitation on, for grounds newly discovered.*
   The limitation of three years upon an application for a new trial, in cases appealed to the Supreme Court, runs from the date of the judgment of the Circuit Court.

   | 33 | 161 |
   |----|-----|
   | 59 | 444 |
   | 33 | 161 |
   | 60 | 55 |

2. SAME: *Bill of review not superseded by*
   The bill of review is not superseded by the statute which authorizes the Circuit Court to vacate or modify a judgment for grounds discovered after the term at which it was rendered. The statute extends to cases at law a new remedy, without taking away any which existed in equity, and as to the latter is cumulative.

   | 33 | 161 |
   |----|-----|
   | 61 | 348 |
   | 33 | 161 |
   | 63 | 144 |
   | 33 | 161 |
   | 74 | 156 |

10

Jacks et al. vs. Adair et al.

3.  JUDGMENTS OF SUPREME COURT: *Review by inferior court; injunction against.*
    A judgment or decree of the Supreme Court cannot be reviewed, altered or
    modified by an inferior court for error upon the record; but for matters aris-
    ing after the judgment or decree of the Appellate Court, and which would
    render it inequitable to carry it into execution, it may be *enjoined.*

4.  BILL OF REVIEW: *After affirmance in Supreme Court; Prohibition against.*
    A bill of review for new matter discovered after affirmance in the appellate
    court, is permissable; but leave to file it must first be obtained, if not from
    the Appellate Court, at least from the Chancellor. It rests in his sound
    discretion to grant or refuse it. But, if he should err or abuse his power in
    this regard, the remedy is not by prohibition fro·n the Appellate Court.

5.  SAME: *Limitation on.*
    Against bills of review for newly di covered evidence, there is no positive
    statutory bar.

EAKIN, J.:

In accordance with the opinion of this court, delivered in the
first case and reported in 31 Ark., p. 616, judgment was, on
the 19th of May, 1877, entered here on the supersedeas bond,
in favor of Martha Griffin, as administratrix, etc., against Eli
T. Diamond and Thomas M. Jacks, and also against John P.
Moore, as surety, for the sum of $4883.05, and interest
thereon from the 26th day of March, 1874, and the further
sum of $488.30, being 10 per cent. interest on the judgment,
and execution was ordered.

On the 24th day of July, following, the defendants below,
Diamond and Jacks, filed in the office of the Lee County Cir-
cuit Clerk a motion for a new trial, on the ground of newly
discovered testimony, upon which said Clerk, by order of the
Judge of the County Court, issued an interlocutory injunction
against the execution from this court.

On the 30th of October, following, Ira A. Webster, who
seems to have been then recently appointed in Ohio, as the
administrator of Benj. F. Griffin's estate, answered the peti-
tion, appending thereto a demurrer, assigning for cause, *first,*
that the final decree was rendered more than three years before
the petition was filed : and amongst others a *fifth,* that due

diligence had not been shown in procuring the evidence. The answer, with a large mass of testimony, not necessary now to be noticed, is sent up with the transcript.

The demurrer was sustained on said first and fifth grounds, petition refused, and the interlocutory injunction dissolved, with damages assessed at $300, for which judgment was rendered in favor of said administrator against Jacks. Appeal granted and bond for supersedeas filed. The transcript of these proceedings was filed here on the 30th day of January, 1878.

Afterwards, the original appellee Martha Griffin, moved this court for an alias execution on the judgment rendered here in May, 1877, setting forth the facts as above stated. Appellants responded, relying upon the second appeal and supersedeas, and the filing of the transcript here, as effective to retain in force the interlocutory injunction issued below; filing at the same time their motion to renew the injunction here.

Before any action had been taken upon either of said motions, on the 22d of June, 1878, said Webster, as administrator, etc., appeared here and applied for a prohibition; suggesting and showing by proper exhibits, not only the foregoing proceeding, but also: That pending them, on the 9th of February, 1878, said Diamond and Jacks had filed a bill in equity in the Circuit Court, to review the original judgment or decree of that court, and to enjoin the judgment of this court, and that an interlocutory injunction had been issued, as prayed. Further, that the cause below had been heard, upon demurrer to the bill, and motion to dissolve the injunction, on the 7th of May, 1878, when the court had overruled the demurrer, continued the injunction and ordered the suit to progress.

An inspection of the Bill of Review exhibited, discloses that it is based substantially upon the same grounds as the former petition for a new trial, to-wit; that long after the de-

cree rendered below in the original cause, the defendant, Jacks, discovered that James Adair was at the time of the compromise of the rights of the legatees of Dennis Griffin, himself the real owner, by purchase, of the whole interest of B. F. Griffin, deceased; that he had concealed this fact when he pretended to act as said Griffin's attorney, and during the progress of the suit; whereby the decree had been rendered in favor of the administratrix of said Griffin, when, if the facts had been known, the decree should have been for Jacks and Diamond,   The bill further alleges that the estate of said B. F. Griffin is wholly insolvent; that the administration is in Ohio; that said Webster has no means nor assets of any kind in his hands; that his administration was taken for the sole purpose of defending this suit, as that of his predecessor Martha Griffin, had been for the purpose of prosecuting the original one, and that James Adair and his wife were also insolvent.   These are the main features of the bill, wnich contains also allegations tending to show due diligence, and the usual formal requisites.

The Judge of the Circuit Court waives notice of the motion for prohibition, and these matters are all now submitted together, on argument and brief of counsel.

It is convenient to consider first the motion for a new trial and the proceedings thereon; as their determination will affect the several motions for an alias execution, and to continue or renew the restraining order first issued by order of the Judge of the County Court.   The motion for a prohibition must rest on different gounds wholly jurisdictional.

The application for a new trial was made shortly after the affirmance of the decree here, but more than three years after it had been rendered.   The cause had not been remanded, but execution had been ordered from this court, returnable here.

The remedy sought was statutory, in derogation of the common law principle that the judgments of the Circuit Court at law, cannot be altered by the same court after the close of the term, except by bill in Chancery, in a direct attack for fraud. Section 3596, of Gantt's Digest, authorizes the court in which a judgment or final order has been rendered or made, to vacate or modify it, after the term in certain cases specified; one of them being by granting a new trial for the cause, and in the manner prescribed in section 4692. By section 3601, the party seeking thus to vacate or modify a judgment or order may obtain an injunction to suspend proceedings on the whole or a part thereof, to be granted by any officer authorized generally to grant injunctions, upon proper showing by affidavit or exhibition of the record. Section 4692, to which reference is above made, provides that when grounds for a new trial are discovered after the term at which the verdict or decision was rendered, the application may be made by petition, filed with the Clerk not later than the second term after the discovery, on which a summons shall issue as on other complaints, etc. It is further provided, that no such application shall be made more than three years after the final judgment was rendered.

In case of a decree appealed, and affirmed in this court, and retained here for execution, to what judgment or order does the statute refer? Not to the decree of affirmance in this court. The court below cannot certainly vacate or modify that. Waiving the question whether the court below can entertain such a petition at all during the pendency of the appeal here, and before the cause is remanded, when the record shows that the whole matter has been removed from the control of the inferior court; if that court can act at all, it must act on its own judgment, or order, and not upon that rendered here. It seems obvious that the judgment or order rendered below, in

case of affirmance, must give the point of time from which to estimate the limitation for a motion for a new trial.

The Circuit Court, then, did not err in sustaining the demurrer to the petition on the ground that it had not been filed within three years. The statute makes no exceptions, and it is not within any manifest equity of its provisions to make one in a case like this. The appellant had the option to dismiss the appeal, and rely upon his petition at any time within the three years, upon the discovery of new evidence, and there is no more reason for extending the statutory limit where an appeal has been taken, than exists when it has not. The appeal is his own and creates the obstacle against filing the petition below, if any exists, pending the appeal. He ought not to be allowed to experiment with an appeal, and rely upon it, until its futility be shown by affirmance of the judgment; and then have a still further extension of three years to file a petition for a new trial. This would enable him, at least at his option, if not of his wrong, to make an indefinite extension of the limitation dependent upon the delays incident to this court.

This conclusion decides also the motion for a renewal of the injunction granted on the petition, and renders it unnecessary to rule in this case, whether an appeal with supersedeas should continue an injunction dissolved. The judgment of the court below upon this branch of the submitted matters must be affirmed. If this were all before us it would follow, also, that an alias execution should go in the original case. It is proper, however, that the discretion of the court in ordering or refusing it, for the present, should be influenced by the matters brought to its notice by the application for a prohibition.

The bill of review, against the prosecution of which the motion for a prohibition is directed, seeks to review a decree, after appeal and affirmance, and which has not been remanded. The first question presented *in limine* is, whether, since the

code, bills of review are proper at all, in any case. Or does the statutory remedy to vacate and alter judgments and orders supersede the old practice in equity?

Its language is certainly broad enough to apply to cases in equity as well as at law, although perhaps not the aptest to have been used if the Legislature had had both in view. It may be said of the code generally that it applies to both modes of proceeding whenever its provisions are of a positive and mandatory nature, exclusive of all other modes. Yet it does in the outset, (sec. 3,) recognize and adopt proceedings in equity as distinct from those at law; and for the rules governing proceedings in equity, we must look to the old chancery pleadings and practice, as they obtained when the code was adopted. These are proper yet, unless altered by the code as above indicated. Indeed, the general scope and purpose of the code of civil practice, recently enacted, seem rather directed to assimilating proceedings at law with those in equity, than to the alteration of the established chancery practice in any important degree.

Under provisions of law precisely like ours in this respect, these views have been held by the Supreme Court of Kentucky, and the old practice as to bills of review has been continued under the Code. This was announced in the case of *Bush* v. *Madeira's heirs*, 14 B. Monroe, and has been since followed without question (see *Mitchell* v. *Berry*, 1 Met., 609 ; *Baker* v. *Grundy's heirs*, 1 Dan., 282 ; *Peak* v. *Percefull*, 3 Bush., 218. The correct view of the statute in question seems to be this : that it extends to cases at law a new remedy, without taking away any which existed in equity, but, as to the latter being cumulative, where any difference might exist. It is noticeable that the word "decrees" is not used, which is the apt and ordinary designation of final orders in equity ; and there are other indications in the language and context of the

provisions in question, that they were primarily intended for cases at law, and for new trials of facts found by a jury, or a court sitting as such.

The graver and more difficult question is, can a bill be brought in the court below to review a decree after appeal and affirmance, whether remanded for execution, or in process of execution here.    For if it might be done after remanding, it is not to be presumed that such right was intended to be precluded by retaining it here for execution.    And as incident to this jurisdiction, it devolves upon us to inquire whether the process of this court may be enjoined.    The question presented by this motion for a prohibition, is, as remarked, purely one of jurisdiction.    If the Circuit Court has power to entertain such a bill, the merits of the cause must be decided there. However erroneous the proceedings may be, however gross the mistake about to be committed, no considerations of hardship or convenience should induce this court to exercise the delicate and dangerous power of prohibition, for the prevention of that which may be corrected by appeal.

Under our system of judicature, this court has no original jurisdiction over the merits of cases, except in a very few special cases.    But the channels to it from all inferior courts are kept open, and converge to it as a center.    The necessity for its controling power by prohibition does not exist here, as it does in the King's Bench in England.    There it is used, principally, to restrain, within permissable bounds, those courts whose jurisdiction is, as it were, by sufferance and permission of the Common Law, such as the Ecclesiastical, the Maritime and other special courts, from which no appeal lay to the King's Bench.    It must often correct and restrain by prohibition, or not at all.    It is the King's prerogative writ, applicable indeed to his own inferior courts of Common Law, but principally useful to keep within bounds those peculiar

courts not proceeding by the usual course of law. In America the writ is still proper and useful, but is more rarely called in requisition, inasmuch as the Supreme Courts have generally appellate powers only, but have them either mediately or immediately from all judicial tribunals whatever; and may thus preserve uniformity of proceedings and check all encroachments. There may be undoubted and palpable cases of usurpation of jurisdiction, as if a Court of Chancery should presume to try an indictment, the County Court an action of ejectment, or the Circuit Court some matter exclusively committed to some other jurisdiction. These exceptional cases would afford proper occasions for the exercise of the power of prohibition, and the Constitution has armed this court with due powers for the purpose; but to go further and entertain motions for prohibition in cases of even doubtful jurisdiction, might be a dangerous and very embarassing interference with the powers, duties and wholesome efficiency of those superior courts of original jurisdiction, which are charged with the speedy and general administration of the laws, for the benefit and protection of the citizens.

· It results from the nature and supremacy of this court that no inferior tribunal can review, alter, or modify its judgments or decrees, for any supposed error, or for any matter which might have been considered here. Hence there can be no review for error upon the record.

It has been well settled, however, that for matters arising after the judgment or decree of an Appellate Court, which would render it inequitable to carry the judgment or decree into execution, it may be enjoined. That detracts nothing from the dignity or supremacy of the superior tribunal. It presents new equities for original jurisdiction.

With regard to bills of review for new matter, discovered after affirmance of decree in the Court of Appeals, the first,

and only English case is that of *Barbon* v. *Searle*, 1 Vernon, 416. That was a bill filed in Chancery for newly discovered matter after an appeal and order in the House of Lords. It prayed an answer and discovery as to the matters alleged, in order that by the discovery the complainant might be capacitated to apply to the Lords for such relief as he might require; and expressly disclaimed any design to impeach the order of the Lords. Upon demurrer and argument, the court ordered that, inasmuch as the Lords were not then sitting, whereby to have a direction touching said matter, and if they had been, that an answer could not be put in there, on oath; and inasmuch as *there ought to be a discovery*, to put complainant in position to apply to the Lords for such relief as they might see fit to give, the defendant should answer; but that no further proceedings be thereupon had, without the further order of the court.

Chancellor Walworth, in the case of *Stafford* v. *Bryan*, 2 Paige, 45, considered this as an authority *against* the power of the Court of Chancery to entertain a bill of review, after the decree of the court for the correction of errors; basing his opinion on the ground that it was a bill for discovery only; and that the court refused to allow complainant to go further after answer, without leave first to be granted. The case is nevertheless an authority directly in point, to show that the court did not consider any decree, of even the highest tribunal, a positive bar to the enforcement of a plain equity afterwards brought to light, and which could not be determined in the case, when adjudicated. The Court of Chancery did entertain jurisdiction to go as far as it could, and as far as was necessary towards that relief, upon the express grounds that the House of Lords could not entertain original jurisdiction to enforce an answer. Thus far it was obvious that the Court of Chancery must give relief, if it was to be had anywhere, to the extent of revealing the rights of the parties upon the facts

to be disclosed by the answer, referring it to the Lords to grant relief when the matter might be presented.

Under our system, this court has not the power to grant the relief upon any disclosure of new matter after the term, and the want of this power may create the necessity in our Courts of Chancery to proceed to the relief itself.

The most eminent text writers have accordingly considered this as an authority, that a bill of review is permissible after an affirmance by the Appellate Court. (See Barbours Ch. Pr., vol. 2, p. 23; Story's Equity Pleadings, 88; Daniel's Ch. Pr., chap, 34, sec. 5), and the general current of American authority has been in the same direction.

In the case of *Singleton* v. *Singleton et als.*, 8 B. Monroe, p. 367, the court say: "An affirmance does not fix unalterably the rights of the parties, but only renders the decree irreversible by the party against whom it is affirmed, for any errors which he assigned, or might have assigned, or for any error arising on facts known and which he might have introduced into the record. A judgment affirmed may be enjoined. After affirmance against one party, the opposite party has been allowed to reverse for errors assigned by him. After affirmance a bill of review may be brought upon facts newly discovered." See also *Hawkins* v. *Lambert*, 18 B. Monroe, 670. The original court is the proper tribunal for this purpose (*Beasely* v. *Mershon*, 6 Bush., 424). The same principle has been several times asserted by the courts of Virginia and Tennessee, always with the distinction between bills of review for error of law, and those for newly discovered matter.

Without multiplying citations it may be taken as the result of American authorities, that whilst all deny the power of the Court of Chancery, after the action of a Court of Appeals, to review its decrees for matters which might have been assigned as error, they either expressly announce, or with

very few exceptions, concede this power for newly discovered facts; and it must exist of necessity somewhere, or there would in many instances be a total failure of justice. This court cannot entertain jurisdiction of a bill of review of its own decrees. Such bills are not of an appellate character, but when founded upon newly discovered facts, as this is, are of original nature.

Upon the appeal of a bill of review from the Circuit Court of the United States for the District of Kentucky, which bill had been filed after a decree upon the subject matter in the Supreme Court, Mr. Justice Nelson in his opinion said:

"Nor will a bill of review lie in the case of newly discovered evidence after the publication or decree below, when a decision has taken place on appeal, unless the right is reserved in the decree of the Appellate Court, or permission is given on an application to that court directly for the purpose. This appears to be the practice of the Court of Chancery, and House of Lords in England, and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between parties in Chancery suits."

Southard, et als v. Russell, 16 Howard, 547.

And he cites in support of this view, the case in 1 Vernon, 416, and that in 2 Paige, 45, together with several other authorities, some of which however, are but little in point. It is to be observed that this was upon an appeal of the case, and a consideration of the merits and practice; and not upon a prohibition or question of the powers and jurisdiction of the Circuit Court. Whether or not it would be prudent, or in consonance with the constitutional powers and design of this court to establish this practice here, is a question not necessary now to decide.

If it were conceded that a bill of review ought not to be filed in the court below after an affirmance here, without the leave of this court reserved or afterwards granted, it would be error in the court below to allow it, just as it would be improper to allow a bill of review in ordinary cases without leave of the court where filed. But it would not be such defect of jurisdiction as to evoke our interference by prohibition.

Under our constitution the Circuit Courts are the great reservoirs of all unappropriated jurisdictions. They are the general resort when rights are to be enforced, or wrongs prevented or redressed, and there is no other tribunal competent. Section 2, Article vii, of the Constitution, provides that "the Circuit Court shall have jurisdiction in *all* civil and criminal cases, the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution." This court has no jurisdiction exclusive nor concurrent, to entertain bills of review of this nature.

In any case leave to file a bill of review for new matter is necessary, if not from this court, at least from the Chancellor.

It rests in his sound discretion, and it devolves upon him to be very careful that the decrees of the court be not trifled with, or brought into contempt by frivolous or vexatious applications for review, intended for oppression or delay. But if. he should err or abuse his power in this regard, the remedy cannot be by prohibition, without an abuse of power here which might lead to disastrous consequences. All things should be done in due order.

The points have been made by counsel, that this bill is barred by time, and the complainant's have not obeyed the former decree. These too, are not jurisdictional questions, and we deem it proper to refrain from their discussion. We may indicate in this opinion that for newly discovered evidence, there is no positive statutory bar. Whether the Chancery Courts

should by analogy follow the limitation of three years, pre-scribed by the statute for motions for a new trial ; or that of five years prescribed in Gould's Digest, chapter 28, section 128, for bills of review in cases of bills taken *pro confesso* against defendants not summoned ; or whether they should in the exercise of their discretion, be governed by the equities of the particular case as affected by staleness or laches, are questions better left in the first instances to their discretion.

Bills of review of this nature are not matters of right, but depend upon sound discretion.

The motion for a prohibition must be refused at the cost of petitioners.

The decree of the Chancellor in the second case of *Jacks* v. *Adair*, dismissing the petition for a new trial, and rendering a judgment for damages on the injunction, must be affirmed.

In the case of *Jacks* v. *Adair*, in which judgment was ren-dered against him, in May, 1877, being the first of those named, and on which on the motion for an alias execution, the death of said Mary Ellen Adair was suggested, and Ira A. Webster, as adm'r, *de bonis non* of said Benjamin F. Griffin, appeared and was made a party, the clerk will issue execution for damages awarded on the appeal, and costs in the name of said Ira A. Webster, adm'r. *de bonis non*, and not for debt until further orders.