## MEYER *v.* JOHNSON.

### Opinion delivered December 15, 1894.

1. *Judgment of Supreme Court—Conclusiveness.*

A judgment or decree of the Supreme Court cannot be reviewed, altered or amended in an inferior court for any supposed error, or for any matter which might have been considered there.

2. *Equitable garnishment—Laches.*

Where a garnishee in an attachment proceeding answered that his indebtedness to defendant, if any, would be determined in certain pending suits, a delay on the plaintiff's part of more than five years before taking further steps to enforce his claim against the garnishee is such laches as will prevent his having the final decrees therein applied to the payment of his claim, where such suits were prosecuted in defendant's name for the benefit of other creditors.

Appeal from Chicot Chancery Court.

JOHN C. CONNERLY, Special Chancellor.

*W. B. Streett* and *J. M. Rose* for appellants.

1.  Judgments of this court cannot be reviewed or modified by the inferior court.  33 Ark. 161; 10 *id.* 186. The decision of the appellate court is the law of that case in all further proceedings.  44 Ark. 383.  All questions determined by the Supreme Court on appeal are *res judicatae.*  6 Ark. 525; 7 *id.* 542; 26 *id.* 17.

2.  Carlton's claim should not have been allowed. He failed to perfect his lien by suit and judgment.  25 Ark. 152.  Garnishment is purely statutory, and the statute must be followed.  Mansf. Dig. secs. 317, 342–347; 45 Ark. 271; 48 *id.* 349; 47 *id.* 220.

3.  The claim is stale, and barred by limitation.

*D. H. Reynolds* for appellees.

1.  The reversal by this court was an entirety, and thereafter there was no decree left in the case, and the case comes up for a new trial.  54 Ark. 283; 131 U. S. 148; 36 Ark. 17. 26; 52 *id.* 480; 36 *id.* 26; 52 *id.* 480; 117 U. S. 228.  Only questions *actually passed* on by the courts, or that must necessarily be passed on, are *res judicatae.*  54 Ark. 575; 53 *id.* 312.

2.  Carlton was properly made a party.  Mansf. Dig. secs. 4933, 4940; 32 Ark. 406.  His claim was properly allowed.  32 Ark. 406; 25 S. W. 614.

BATTLE, J.  This is the second time this action has been in this court on appeal.  When it was here the first time, the decree of the chancery court was found to be correct in all respects, except it allowed interest on the account of Meyer against Johnson for 1883 at the rate of ten per cent. until paid, when the interest should have been allowed at ten per cent. until February 14, 1884, and after that time at six per cent. per annum.  The decree was reversed, and the cause was remanded with

directions to enter judgment in accordance with the opinion of this court, and for further proceedings.

To understand the proceedings of the chancery court after the cause was remanded, it will be necessary to state a few of the facts as they appear in *Johnson* v. *Meyer*, 54 Ark. 437. It appears that in June, 1881, W. W. Johnson mortgaged certain lands to Adolph Meyer to secure a note for $934 and advances. Later, in March, 1883, he gave a deed of trust, conveying certain lands and personalty, to secure a debt to Meyer of $860, as evidenced by account , also to secure $1000 in advances to be made by Meyer. The trustee was authorized to sell on thirty days' notice. In 1884, Meyer had the lands advertised for sale under both mortgages. Johnson then brought this action to enjoin a sale under the first mortgage, claiming that the indebtedness it secured was embraced in the second. Meyer answered, denying that the note for $934 was embraced in the second. By way of cross-complaint, he asked that the mortgages be foreclosed. A master was appointed to take proof and report (1) whether the note executed by W. W. Johnson to A. Meyer in June, 1881, had been included in subsequent settlements between the parties; and (2) what amount was due from Johnson to Meyer growing out of transactions for the year 1883. The master reported that the note was not included in any subsequent settlement, and that there was due to Meyer, on account of the transactions of 1883, a balance of $514.46, with interest; and further reported that this sum was exclusive of $566, which had been sued for in another case. Upon this report a decree of foreclosure was rendered, and Johnson appealed. This decree was, in effect, affirmed, except as before stated, and the cause was remanded.

Upon the filing of the mandate of this court in the chancery court, Alice B. Johnson, as widow and execu-

trix of W. W. Johnson, who had died, appeared and filed a motion, and, in effect, asked, that the decree of the chancery court and of this court be so corrected as to allow six per cent. per annum interest on the note for $934 from demand by institution of suit or otherwise, in lieu of that allowed by the decree of the court. The reason assigned for the motion was: "It nowhere appears in the pleadings or evidence, in this case, that the said note for $934 was bearing any rate of interest as being past due, or that it was to bear the same rate of interest from date or from maturity until paid, or at what time it would become due and payable." The motion was denied, and a decree in accordance with the mandate of this court was entered, except as hereinafter stated.

After the cause was remanded, on the 10th of September, 1891, C. H. Carlton filed what he called a motion, in which he stated that he, on the 23d of January, 1886, instituted a suit against Meyer in the Chicot circuit court, and sued out an order of attachment therein, in which the sheriff was directed to attach and safely keep the property of the defendant, and to summon W. W. Johnson as garnishee, which was done on the same day; that Johnson answered at the July term, 1886, setting up, in substance, that this suit and another were pending, and that his indebtedness, if any, would be determined by them, and that he had no property of Meyer in his possession; that he (Carlton) took no further action against Johnson; that he recovered a judgment against Meyer for about $800; that the attachment and garnishment were sustained; that a part of the judgment has been collected, but the greater part of it is still unpaid; and that, at the time of the garnishment, Meyer was the sole owner of the indebtedness contracted by Johnson with him; and asked that he be made a defendant in this action, and that if, upon final determination, it shall be

found that Johnson was indebted to Meyer, so much thereof be appropriated to the payment of the judgment recovered by him as shall be sufficient to pay the balance remaining unpaid thereon.

Carlton was made a party; whereupon Freedman Bros., Levi, Loeb & Co., Burdolph Meyer, and A. Adler & Co., creditors of Meyer, filed an answer to the complaint of Carlton, and therein stated "that no proceedings of any kind or nature have been had or taken" upon the garnishment of Johnson after his answer to the summons served on him, as garnishee, on the 23d of January, 1886; that, at the time Johnson was garnished, Meyer had no interest in the indebtedness contracted by Johnson, Meyer having transferred his entire interest therein, by an instrument of writing, to them, on the 21st of January, 1886; that they were expressly authorized by the instrument to prosecute the action, in which the indebtedness was involved, to judgment, for their own sole use and benefit, which they did; and that if Carlton ever had any claim, it was lost by laches—was stale—and barred by the statutes of limitation.

After hearing the evidence adduced by Carlton and the creditors to whom Meyer assigned his claims against Johnson, the court rendered a judgment in favor of Carlton for $542.06, the balance due on the judgment recovered by him against Meyer, and six per cent. per annum interest thereon from the date of the judgment in this action in his favor, and ordered the same to be paid out of any moneys that should be collected on said indebtedness of Johnson; and the creditors to whom the same was assigned appealed.

**1. Judgment of Supreme Court conclusive.** First. The motion of Mrs. Alice B. Johnson, as executrix of W. W. Johnson, deceased, was properly overruled. The object of it was to change or modify the judgment of this court for a supposed error. If such an error existed, it could have been corrected when this

cause was here on the first appeal. The chancery court could not do so. It cannot "review, alter or modify the judgments or decrees of this court for any supposed error, or for any matter which might have been considered here." *Jacks* v. *Adair*, 33 Ark. 161.

Second. When Johnson answered the summons for him, Carlton proceeded no further on the garnishment, until he filed his complaint in this action. If he desired to appropriate Johnson's indebtedness to Meyer to the payment of his judgment, he should have instituted some proceeding in the nature of an action against Johnson for that purpose. He could not have made Johnson liable to him for what Meyer owed in any other manner. *Giles* v. *Hicks*, 45 Ark. 271, 277. If the proceeding finally adopted by him was the appropriate action, there was no excuse for the delay in instituting it. Five years was the longest time in which he could, under the statutes of limitation, claim the right to commence an action against Johnson as a garnishee. Did he have a longer time to institute the equitable proceeding that he finally adopted? Has he not lost his remedy in equity against Johnson, if he had any, by laches?

While courts of equity have established no guide or rule by which it can be determined, in all cases, what will constitute such laches as will be a bar to relief, it is said, nothing can call them forth "into activity but conscience, good faith and reasonable diligence." They will not permit one party holding an equitable right to property to stand by and permit another, who holds the legal title, to improve and develop it until it has become valuable or greatly increased in value, and then enforce his right; nor to wait until the future decides whether the property will increase or decrease in value, and then elect to take it if it increases. He will not be permitted to experiment or speculate in this way at the risk or expense of another. *Gibson* v. *Herriott*, 55 Ark. 85.

2. Right to enforce garnishment lost by laches.

The principle upon which this rule is based, it seems to us, is applicable to the case before us. Here the assignees of Meyer employed counsel to prosecute the suit for the collection of the claims transferred to them. An order was made by the court that the suits proceed in the name of Meyer for their sole use and benefit. For five years they prosecuted them—presumably, in good faith—believing that whatever judgment they recovered would be their own property. In all this time Carlton stood quietly by, asserting no right, lien, or claim to the matter in controversy, until the right to judgment is established, and the chancery court is ordered by this court to render the same—when Meyer's assignees are about to realize the fruits of a long litigation—and then intervenes. He is too late. Equity and good conscience will not permit him to deprive others of their rewards in such a manner. As he was barred from maintaining an action under the statute, his equitable rights, if he had any, are concluded by his laches, continued beyond the statutory period prescribed for the commencement of similar actions at law. *Ringo* v. *Woodruff*, 43 Ark. 483, 484.

The decree of the chancery court is, therefore, reversed as to Carlton, and in all other respects is affirmed.

Wood, J., being disqualified, did not participate in the decision of this case.

BUNN, C. J. I do not concur in the opinion of the court in this case, in so far as it reverses the judgment of the court below as to the claim of Gaines, administrator of the estate of C. H. Carlton, deceased.

It appears that, just previous to the execution and delivery of the assignment by Meyer for the benefit of his creditors, C. H. Carlton, appellee's intestate, having a debt against him, sued out his attachment, and had service by garnishing W. W. Johnson, the intestate of

appellee, A. B. Johnson. Johnson answered, substantially, that the one matter between him and Meyer was then the subject of pending litigation, and that it would be impossible for him to say what was due from him to Meyer, if anything, until that litigation should be terminated. This answer being, in the legal sense, satisfactory—that is to say, being such only as Johnson could make at the time—Carlton took his judgment of attachment against Meyer, and suffered the garnishment proceedings to remain as they were on coming in of garnishee's said answer, apparently awaiting the determination of the matters between Johnson and Meyer, as suggested in the answer. It appears that, after the matter between Johnson and Meyer had been determined (the other creditors of Meyer, having become parties to this controversy in the meantime), Carlton asked and obtained leave to intervene for the protection of his rights in the premises, and to be paid out of the funds found to be owing from Johnson to Meyer, and the court below sustained his claim, but its judgment in that respect is reversed by the opinion of this court.

I think Carlton had a first claim on any funds in the hands of Johnson belonging to Meyer, or any indebtedness of the former to the latter existing at the time of the service of the writ of garnishment, provided the assignment had not been fully executed and delivered before that time, which the court below seems to have found not to be the case. Carlton was not compelled by statute to institute regular suit against Johnson after the coming in of his answer, for two reasons : first, because such a procedure is not compulsory in any event, and, secondly, because it is only required, at all events, in case the answer of the garnishee failed to make satisfactory disclosures, or made a disclosure upon which judgment could be rendered.

The garnishee's answer in this case was unobjec-

tionable.  It disclosed all that could be disclosed, and its statements were necessarily satisfactory so far as the garnishee was expected to make it.  A formal suit against the garnishee, at the time, could have had no other result than was finally obtained, since it also would have had to await the end of the controversy between Johnson and Meyer.  All the world must have taken notice of the pendency of the garnishment proceedings, and the record would show the cause of the delay in those proceedings.  There is no rule by which a proceeding is dismissed for unnecessary delay, except at the instance of the party against whom the proceedings are had, or whose rights they are calculated to prejudice in some way.  Certain it is, that Carlton could not be expected to have his own proceedings dismissed because they could not be concluded satisfactorily within a great length of time.  When the matters between Johnson and Meyer were finally determined, and Johnson was found to have been owing Meyer at the time of the service of the writ of garnishment upon him, Carlton filed his intervention to have his rights finally determined.  Since there was no necessity, and really no grounds under the statute, for Carlton to institute a formal suit against his garnishee, Johnson, there can be no application of the statute of limitations to delay in bringing such a suit. It was simply a case of pending proceedings undisposed of, during which there can be no point at which the statute begins to run.  The question is one rather whether or not garnishment proceedings end as a matter of law on the coming in of the garnishee's answer.  I think they do not, and that it depends altogether on the character of the answer as to what shall be the subsequent proceedings, or when they shall be resumed, as in this case.  I think there was no error in the judgment of the court below in this respect, and in so far its judgment should have been affirmed.