## HUGH MAHER

### v.

### CHARLES B. FARWELL *et al.*

*Filed at Ottawa November 20, 1880.*

1. MORTGAGE—*deed absolute in form—proof must be clear—laches.* On bill to have a deed, absolute on its face, declared a mortgage, and for leave to redeem, filed thirteen years after the transaction, and seven years after a refusal to accept the amount offered as the sum due, it is incumbent on the complainant to establish, by clear and satisfactory testimony, beyond all cavil, the material allegations on which he bases his right to relief.

2.  When a bill to redeem from an absolute deed, on the ground it was given as a security for money, is not filed until thirteen years after the date of the alleged transaction, and more than seven years after the grantee distinctly refused to recognize complainant's rights, which appears in the bill, and there is no sufficient excuse for the delay, the laches is such as to bar his right to relief.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

On the 12th day of September, 1873, plaintiff in error filed, in the Superior Court of Cook county, a bill in chancery against defendants in error, alleging, in substance, that on or about the 20th of November, 1855, Hugh Maher and one William H. Warder entered into a written contract with Thomas B. King, for the purchase of certain real estate in Cook county, particularly described in the bill, the consideration being $5100; that the same was duly recorded in the recorder's office in Cook county, on the 1st day of December, 1855; that prior to the 12th of December, 1860, Warder, for a valuable consideration, conveyed all his interest in the contract to Maher; that Maher paid to King the whole of the purchase money, on or about the 12th of December, 1860; that prior to the time of such payment, Maher owed Charles B. Farwell a gambling debt to the amount of about $1700, for money won at cards by fraudulent contrivances and devices, for which Farwell held his promissory note; that it was agreed between them that Maher was to cause the land mentioned in the contract to be conveyed to Farwell, by way of security for this note, upon the understanding that Farwell was to pay all taxes and assessments until the note was paid, when Maher was to refund the taxes and assessments so to be paid by Farwell—no time being fixed as to how long this arrangement was to run; that in pursuance of this understanding, King, at the request of Maher, on the said 12th day of December, 1860, made the conveyance of the lands in question to Farwell; that though the deed was absolute in form, yet it was, in fact, but a security for the pay-

ment of the note, and was so intended and understood by the parties; that about five or six years after the making of the deed, Maher proposed to pay Farwell the amount of the indebtedness, together with all taxes, etc., paid by Farwell on account of said land, but that Farwell claimed something over $1000 more than Maher owed him, and would not accept what was justly due under the arrangement; that Maher neglected saying anything more to Farwell about the matter on account of its being a delicate subject—the claim being a gambling debt; that within the last few days Maher had learned, for the first time, that Farwell had, on the 12th of October, 1866, for the consideration of $100, quitclaimed sixty acres of the land to Charles B. Pope, and that Pope and wife, by quitclaim deed, on the 14th of November, conveyed the same land, for a like consideration, to Parmelia Eaton, George Eaton, Emily Trussell, and Salma Trussell; that Salma Trussell and wife conveyed their pretended interest to George Eaton for the pretended consideration of $750; that George Eaton and Emily Trussell have made a pretended contract with William W. Perkins for the sale of said last mentioned piece of land at and for the consideration of $39,000; that all of the said conveyances are fraudulent as against Maher, having been made with notice of his rights; that Maher, for the first time, learned on the 30th of August, 1873, that Farwell, on the 4th of October, 1872, had conveyed the remaining twenty acres, for the alleged consideration of $9000, to Alexander White; that said conveyance to White is a sham, and fraudulent as to Maher; that White disclaims all interest in the land, and claims to hold the same for one Sylvester Lind.

All the above named persons are made parties to the bill, and the bill prays that so many of these parties as appear to have any interest in the land be compelled to convey the same to Maher, but if this can not be done, that Farwell be compelled to pay to Maher the present value of the lands.

The defendants filed answers denying all the material facts in the bill, to which there were replications.

Perkins also filed a cross-bill praying that the court decree that Maher has no interest in the land by virtue of the contract between him and King, and that his interest therein be declared extinguished by the conveyance from King to Farwell, etc.

On the 10th of January, 1874, by consent of parties, the cause, together with all the papers and files pertaining thereto, were removed into the circuit court of Cook county, where the same, on the 29th of June following, was heard upon original and cross-bills, answers, replications and proofs.

The circuit court found the equities with the defendants in the original bill, and rendered a decree dismissing the same, from which decree Maher has appealed to this court.

Mr. JESSE COX, Jr., for the plaintiff in error :

A conveyance of land absolute in terms, if intended as a security for a debt by the parties, is a mortgage, whether the intention is manifested by a written defeasance executed at the time of the conveyance, or by parol declarations, or by the acts of the parties. *De Wolf* v. *Strader*, 26 Ill. 225; *Deven* v. *Blake*, 44 id. 135; *Price* v. *Karnes*, 59 id. 276.

It is not probable that Maher, then a wealthy man, would sell an unincumbered tract of land to Farwell at one-fourth the price he had just paid for it, especially for a gaming debt. *Chapin* v. *Dake*, 57 Ill. 295; *Gordon* v. *Casey*, 23 id. 70.

The assignment of any security for a gaming debt, or conveyance, will not affect the remedies of any person interested therein. Gross Stat. 1869, p. 312, sec. 4; *Chapin* v. *Dake*, 57 Ill. 295.

Mr. JOHN J. KNICKERBOCKER, for the defendants in error :

There are no presumptions that the consideration for the deed was unlawful. Phil. Ev. (5 Am. ed.) 673; *McCagg*

*et al.* v. *Heacock et al.* 34 Ill. 476 ; *Steven* v. *Cushman,* 35 id. 198 ; *Phillips* v. *Roberts,* 90 id. 498.

The evidence must be strong and convincing to show that a deed absolute in form was intended as a mortgage. *Stone et al.* v. *Duvall et al.* 77 Ill. 478 ; *Remington* v. *Campbell,* 60 id. 516 ; *Pitts et al.* v. *Cable et al.* 44 id. 103 ; *Magnusson* v. *Johnson et al.* 73 id. 159.

The fact that a conveyance of real estate is in form an absolute warranty deed, raises a strong presumption that it was a sale, and this is strengthened by lapse of time. To show such a deed to be a mortgage only, the proof must be clear and convincing. *Hancock* v. *Harper,* 86 Ill. 445 ; *Knowles* v. *Knowles,* id. 11 ; *Wilson* v. *McDowell,* 78 id. 517.

Mr. GEO. W. SMITH, for the defendants in error Farwell, Lind and White :

The complainant was bound to establish his case by a preponderance of testimony. It was not sufficient that he should contradict or negative the testimony of Farwell.

As to the bet upon the election of Mr. Lincoln, counsel cited *Stevens* v. *Sharp,* 26 Ill. 404 ; *Gordon* v. *Casey,* 23 id. 70 ; *Guyman* v. *Burlingame,* 36 id. 201 ; *McClurken* v. *Detrich,* 33 id. 349 ; *M. S. L. and T. Co.* v. *Goodrich,* 75 id. 554 ; *Gregory* v. *King,* 58 id. 169 ; Story's Eq. Jur. sec. 298 ; *Lucas* v. *Nichols,* 66 Ill. 41 ; *Sherley* v. *Howard,* 53 id. 455 ; *Mosher* v. *Griffin,* 51 id. 184 ; *Chapin* v. *Dake,* 57 id. 295 ; *Mallett* v. *Butcher,* 41 id. 382.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It will be perceived that the bill in this case was not filed until near thirteen years after the occurrence of the transactions out of which this controversy arose, and not until at least seven years, as is shown by the bill itself, after Farwell had refused to accept the amount which Maher claimed he was entitled to under the arrangement; or in other words until after a difficulty and misunderstanding had arisen between

them in reference to the matter. Waiving for the present the staleness of the claim as a distinct defence, it.must be admitted that after this very extraordinary lapse of time, it was undoubtedly incumbent on Maher to establish, by clear and satisfactory testimony beyond all cavil, the material facts alleged in his bill. This has not been done. The alleged trust upon which the conveyance from King to Farwell was made, rests solely upon the testimony of Maher so far as any direct evidence is concerned, and this fundamental fact is distinctly denied by Farwell, who was called and examined as a witness in behalf of the complainant. Conceding there are circumstances corroborating the testimony of Maher, as is claimed by his counsel, still the evidence is clearly insufficient to establish this indispensable fact upon which the whole theory of complainant's case rests.

But, outside of this, the complainant has shown no sufficient excuse for the very extraordinary delay in instituting legal proceedings for the enforcement of his alleged rights. As we have just seen, more than seven years before the institution of this suit, as shown upon the face of the bill, Farwell distinctly refused to recognize complainant's alleged rights, by demanding something over a thousand dollars of Maher more than he was entitled to, and refusing to reconvey the property upon the payment of the real amount due under the agreement; and the only excuse, or pretended excuse, for this almost unprecedented delay, is the fact that the demand against him was a gambling debt, and that he did not want to give it publicity by the institution of legal proceedings, and the further fact that he was to some extent otherwise involved, and it was not convenient to pay the claim, though his own evidence shows he was abundantly able to have paid it had he desired to do so.

The law does not permit one, after having received a supposed injury, to lie by for years until the circumstances connected with it have probably faded from the memory of the witnesses to the transaction, or until they have died or

removed from the country, before instituting legal proceedings to redress it. It is a favorite maxim of equity that the law favors the vigilant, and not those who sleep upon their rights. This suit could not be maintained under the circumstances without a manifest disregard of this principle.

For the reasons stated, we are of opinion that the decree of the circuit court is right, and it must therefore be affirmed.

*Decree affirmed.*

Mr. Chief Justice DICKEY took no part in the determination of this cause, having been connected with same as counsel.