CASE 8.—ACTION BY NANCY WOOTON AND OTHERS AGAINST GRANT MURRELL AND OTHERS.—May 20, 1909.

## Wooton, &c. v. Murrell, &c.

Appeal from Leslie Circuit Court.

L. D. Lewis, Circuit Judge.

Judgment for defendants, plaintiffs appeal.—Affirmed.

Partition—Parol Partition—Effect — Ratification—Acceptance of Benefits.—Where the heirs of an intestate orally partition the real estate, and one of the heirs trades the portion allotted to her for another tract, she will be estopped to claim a portion of the lands not allotted to her twenty years after the partition. Neither can one who claims through one of the heirs recover after twenty years; the heir through whom he claims having traded her portion for the portion of another heir and recognized the oral partition, and afterwards stood by while the other heirs made lasting improvements upon the lands in question.

CLEON K. CALVERT for appellants.

BAILEY P. WOOTTON, JESSE MORGAN, J. L. DIXON, J. M.
MUNCY, and GREENE, VAN WINKLE & SCHOOLFIELD for
appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

In the year 1871 Joel Murrell died intestate in
Perry county, Ky. At the time of his death he owned
a tract of land located on Hell-for-Certain creek. He
also had a title bond for six-sevenths of a tract of land
of about 200 acres located on the Middle fork of the
Kentucky river. Decedent left surviving him a
widow, Polly Murrell, and five children: Nancy,
Mary Jane, Elizabeth, Cynthia, and Grant. Nancy
married Daniel Wooton, Elizabeth married James
Baker, Mary Jane married Frank Dixon, and Cynthia
married Thomas Gay. After the death of Joel Murrell, an action was instituted in the Perry circuit
court to settle the estate of Russell Begley, from
whose heirs Joel Murrell bought the Kentucky river
tract of land. In 1877 a decree was entered ordering
a sale of the tract of land to satisfy the debts due by
Russell Begley. In 1885 the land was sold. Polly
Murrell became the purchaser at the price of $346
and interest and costs of the action. Polly
Murrell did not pay the sale bond, but it was paid
by her son-in-law, Frank Dixon, and one H. C. Napier.
In consideration of the payment made by Dixon. Polly Murrell gave to him and put him in possession of
all the land on the left-hand side of the Middle fork
of the Kentucky river. In consideration of the payment by Napier she gave to him another tract which
was wholly lost to her and her children. This is an
action by Nancy Wooton against the other children
of Polly Murrell for a partition of the tract of land
on the Middle fork of the Kentucky river. The oth-

er children (appellees herein) defended on the ground that there was an oral division of the lands of their father which had taken place more than 15 years prior to the institution of the action, and appellant's right of action was barred by the statute of limitations. Laches and estoppel were also pleaded. Judgment was rendered in favor of appellees, and Nancy Wooton and Felix J. Woods, who had purchased certain interests in the land from Elizabeth and James Baker, and who upon his own motion was made a plaintiff below, prosecute this appeal.

It appears from the record that immediately after the death of Joel Murrell, in 1871, Nancy Wooton and Elizabeth Baker moved to the Hell-for-Certain land, and divided it among themselves. While Joel Murrell had patents to something like 300 acres of land on Hell-for-Certain, it appears that some of this land was lost to him, and that at the time of his death he only owned a small number of acres. However, at that time Polly Murrell owned a tract of land adjoining that belonging to her husband, and of these two tracts Nancy Wooton and Elizabeth Baker took possession. Since that time they have owned and controlled their respective parts as their own. Elizabeth Baker bought a tract on Mill Seat branch of Cutshin, and traded it to Nancy Wooton for her part of the Hell-for-Certain land. After that, Elizabeth Baker traded the part purchased from Nancy Wooton to Cynthia Gay for a part of the latter's interest in the lands on the Kentucky river. It further appears that the tract of land in controversy, which is variously estimated to contain from 200 to 400 acres— the exact number of acres cannot be determined from the record, as the evidence upon that point is vague and indefinite—was taken possession of by Polly Mur-

rell and her three children, Mary Jane Dixon, Cynthia Gay, and Grant Murrell. A long time before her death, Polly Murrell divided this land between her three children, and each of them made lasting improvements thereon, and has owned, controlled, and occupied it as his own ever since. Some time prior to 1877 the children of Joel Murrell made a deed to James Baker, the husband of Elizabeth Baker, of certain land located on Hell-for-Certain. It is insisted that this deed shows a sale by the other children to the Bakers, and is evidence that no oral partition of the Hell-for-Certain land had theretofore been made.

When we consider the small considerations which moved to the other children for the execution of the deed in question, we are constrained to believe that the Bakers recognized the fact that they had no title of record, and the procuring of this deed was for that purpose alone. In the year 1899 Russell Begley's heirs brought suit against Polly Murrell, James and Elizabeth Baker, Grant Murrell, Mat Baker, and Thomas Gay, seeking to recover the land in controversy. Judgment in that case resulted in favor of the defendants. None of Joel Murrell's heirs were joined as defendants in that suit, except those occupying or claiming the Kentucky river land. Nancy Wooton was not a defendant. Elizabeth Baker and her husband were made defendants because they had purchased of Cynthia Gay a portion of the land in controversy. A careful reading of the record convinces us that Nancy Wooton made no effort to help defend that suit, and that at that time she claimed no interest in the land. The chancellor below found as a matter of fact that appellant Nancy Wooton and her sister, Elizabeth Baker, entered upon the Hell-for-Certain lands and accepted them as their share

of their father and mother's estate, and that this partition and agreement were acquiesced in by each of them and their husbands for more than 30 years before the filing of this action. He also found that the lands thus obtained by Nancy Wooton and Elizabeth Baker were fully their share of the estate. The chancellor further found that James Baker and Elizabeth Baker, when they bought out the interest of Cynthia Gay in the lands in controversy, recognized the partition line made between Cynthia Gay and Grant Murrell. The court further found that Mary Jane Dixon, Cynthia Gay, and Grant Murrell were given as their shares in the estate of their father and mother the land in controversy; that the partition between them was made more than 20 years prior to the institution of this action, and that since that time they had managed and controlled their respective portions as their own and had made lasting improvements thereon. The finding of facts by the chancellor we think is abundantly supported by the proof. The only question, then, is whether or not the facts as found will prevent a recovery by appellants Nancy Wooton and Felix J. Woods.

It is insisted by appellants that an oral partition of land is void, and that Nancy Wooton being a married woman, and the disability of coverture having never been removed, the statute of limitations cannot be invoked as against her. We may admit these two propositions, but we are of the opinion that the defense of laches and estoppel presented by appellees is good. In the first place, appellant Nancy Wooton obtained a portion of the Hell-for-Certain land. She afterwards traded that portion so obtained by her for a tract of land on the Mill Seat branch of Cutshin. A portion of this latter tract was afterwards lost to

her. Having placed herself in a position where she is now unable to place in hotchpot her portion of the lands which she first obtained, she will be estopped to claim a portion of the lands sought to be partitioned in this action. O'Dell v. Little, 6 R. 29, 82 Ky. 146. Furthermore, it is manifest that neither Nancy Wooton nor the Bakers, after the expiration of so long a time, when the rights of the parties have materially changed, should be permitted to recover in this action. As the Bakers could not recover, it is equally manifest that Woods, who claims through them, should not recover. The rule applicable to cases of this character is well stated by the Supreme Court of the United States in Moran v. Horsky, 178 U. S. 205, 20 Sup. Ct. 856, 44 L. Ed. 1038, where it is said: "One who having an inchoate right to property abandons it for 14 years, permits others to acquire apparent title and deal with it as theirs, and as though he had no right, does not appeal to the favorable consideration of a court of equity. We need only refer to the many cases decided in this court and elsewhere to show that a neglected right, if neglected too long, must be treated as an abandoned right which no court will enforce. * * * There always comes a time when the best of rights will by reason of neglect pass beyond the protecting reach of the hand of equity, and the present case fully illustrates that proposition." To the same effect is Galliher v. Caldwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. 862, 36 L Ed. 719; Meyer v. Johnson, 60 Ark. 50, 28 S. W. 797; Osceola Land Co. v. Henderson, etc., 81 Ark. 432, 100 S. W. 896. Another clear statement of the rule is as follows: "Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So

long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. This disadvantage may come from loss of evidence, change of title, intervention of equities and other causes; for, where the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.'' Chase v. Chase, 20 R. I. 202, 37 Atl. 804; 5 Pomeroy's Equity, Secs. 21-23.

It is manifest from the foregoing principle that the appellant Nancy Wooton and the Bakers, through whom appellant Woods claims, having acquiesced for over twenty years in the oral division of the land in controversy, and appellant Nancy Wooton having disposed of her share in the Hell-for-Certain lands and the Bakers having traded a portion of their Hell-for-Certain lands to Cynthia Gay for the tract allotted to her in the partition of the Kentucky river land, and having stood by while appellees made lasting improvements upon the lands in question, it would be inequitable and unjust at this late day to permit a recovery by appellant Nancy Wooton or Felix J. Woods, who succeeded only to the rights which the Bakers had, and which they themselves could enforce.

For the reasons given, the judgment is affirmed.