CASE 13.—SUIT BY WILLIAM HOPPER AGAINST L. F. SCHOLL TO HAVE AN ABSOLUTE DEED DECLARED A MORTGAGE.—MAY 26, 1909.

# Scholl v. Hopper

Appeal from Russell Circuit Court.

H. C. BAKER, Circuit Judge.

From a decree for plaintiff, defendant appeals.— Reversed.

1. Mortgages—Nature—Mortgage or Conditional Sale.—The owner of land executed a deed thereto in consideration of $2,000 in cash, and defendant's promissory note for $3,000, and at the same time executed a writing reciting the execution of the deed, and providing that the owner should have the use and control of, and the right to receive the rents from, the land, and that defendant agreed to reconvey if the grantor paid back the $2,000 by a certain date and surrendered defendant's note. The agreement was twice extended by a memorandum, stating that the time to redeem the land described in the agreement and deed was thereby extended. Held, that the transaction was a mortgage and not a conditional sale.

2. Mortgages—Right to Redeem—Waiver.—The mortgagor may waive his right to redeem, under a deed in the nature of a mortgage, by an independent agreement with the mortgagee, if the agreement is fair and based upon a sufficient consideration.

3. Contracts—Consideration—Sufficiency—Release of Right to Redeem.—The owner of the land, in effect, conveyed it to defendant by way of mortgage, receiving $2,000 in cash and a note for $3,000, the parties agreeing at the time that defendant should reconvey if the $2,000 was repaid and his note surrendered, and thereafter the parties executed a writing providing that the agreement should be canceled and the transaction closed and that the deed should stand as made to defendant, the mortgagor having then received four or five hundred dollars in addition to the $2,000. Defendant

and the mortgagor were intimate friends, a strong affection existing between them by reason of defendant having lived with the latter since childhood and occupied practically the position of a son. Held, that, as the mortgagor, under the agreement releasing his right to redeem, was entitled to retain the money received and collect the balance due on the note, the agreement was supported by a sufficient consideration.

4. Contracts — Consideration — Adequacy. — That the entire amount received by the mortgagor was not equal to the full value of the land did not show such an inadequate consideration as to justify the conclusion that defendant took an undue advantage of the mortgagor, in view of the relations existing between them.

### ON REHEARING

5. Mortgages—Absolute Deed as Mortgage—Extinguishment of Mortgage—Agreement Between Parties.—The parties, after executing an absolute deed, accompanied by a collateral contract to reconvey if the grantor paid back a certain sum to the grantee, could, by subsequent agreement supported by a valid consideration, provide that the transaction should be considered as closed and the deed stand as made.

McQUOWN & BECKHAM, N. H. W. AARON and J. N. MEADOWS for Appellant.

BIDDISON, CAMPBELL & EGGLETON and BERTRAM & PHELPS for Appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

About 40 years ago Dr. M. D. Hopper and his wife, the mother of appellee, William Hopper, became estranged, and the wife, with their infant son, William Hopper, moved from Kentucky to the state of Kansas. Some time thereafter William Hopper was adopted by one Joel Hopper. He grew to manhood out West, and, so far as the record shows, had no communication with his father M. D. Hopper. After the departure of his wife Dr. Hopper took his meals at the home of Mrs. Scholl. She was the mother of ap-

pellant, L F. Scholl.  When appellant was. 10 or 12 years of age, he moved to Dr. Hopper's home, and remained there until after he attained his majority. Some time thereafter he engaged in work which required his absence from Jamestown, Ky., where Dr. Hopper lived, but he frequently visited Dr. Hopper, and the latter visited him.  Their relations were very intimate.  Indeed, it would appear that appellant took the place of the child who had been carried out West by his mother.  On November 27, 1905, Dr. M. D. Hopper executed to appellant a general warranty deed, by which he conveyed to him 18 tracts of land, chiefly valuable for the timber thereon.  The consideration expressed in the deed was $2,000 cash and the promissory note of appellant for the sum of $3,000 payable one day after date, and secured by a lien on the land conveyed.  At the same time, as a part of the transaction, the parties executed a collateral writing, which is as follows: "Jamestown, Ky., Nov. 27, 1905, Whereas M. D. Hopper has this day executed and delivered to L. F. Scholl a deed for 18 tracts of land described as follows:  Lying and being on the waters of Caney Fork creek and consisting of 18 tracts adjoining and bounded on the north by the land of D. C. Hopper, on the east by the land of W. T. Mitchell, on the south by the land of M. A. Hopper, on the west by the land of Seth Wade, and being the same land conveyed to said M. D. Hopper by Simco Dockery on the second day of Oct., 1890, by deed recorded in Russell county court clerk's office in Deed Book P, page 323, which deed is referred to and made a part hereof, excluding the land excluded in said deed, for the sum of five thousand dollars, two thousand dollars cash in hand paid and the remaining three thousand dollars evidenced by the promissory

note of said second party, of even date herewith, bearing interest from ———. It is further agreed by and between said parties that said M. D. Hopper is to have the use and control and the right to rent and receive the rents from said land and the right to use said land in any way he sees proper. It is further agreed that should said M. D. Hopper pay back to said L. F. Scholl the two thousand dollars with six per cent. interest thereon by the first day of June, 1906, then said Scholl agrees and binds himself to convey said land back to said M. D. Hopper, and said Hopper is to deliver up and surrender to said L. F. Scholl said note of three thousand dollars mentioned herein. L. F. Scholl, M. D. Hopper.'' This agreement was twice extended by the parties by their writing indorsed thereon. The first extension is as follows: ''The time to redeem the land described in this agreement and deed referred to herein is extended to Jan'y 1, 1907. L. F. Scholl, M. D. Hopper.'' The second extension is as follows: ''The time to redeem the land described in the agreement and deed referred to herein is extended to Jan'y 1, 1908. L. F. Scholl, M. D. Hopper.''

On August 12, 1907, M. D. Hopper and appellant, L. F. Scholl, agreed to cancel the above agreement, and close their business so far as the transaction in question was concerned. This agreement was indorsed on the collateral agreement and is as follows: ''We, M. D. Hopper and L. F. Scholl, having decided to cancel the above agreement and to close our business so far as this transaction is concerned, do hereby agree that said deed shall stand as made. This August 12, 1907. M. D. Hopper, L. F. Scholl.

Witness: O. B. Bertram." At the same time the following was indorsed upon the collateral agreement, and signed by M. D. Hopper and witness O. B. Bertram: "I, M. D. Hopper, further agree and it is my desire that L. F. Scholl shall have the land deeded by me to him, and this is to certify that I have this day delivered the above agreement up to L. F. Scholl and directed him to do as he sees fit with same. This August 12, 1907." M. D. Hopper died a resident of Jamestown, Ky., August 18, 1907. Some time thereafter this action was instituted by his son, William Hopper, for the purpose of having the deed to the tracts of land above referred to adjudged a mortgage. Upon submission of the case the chancellor adjudged that the deed referred to was a mortgage. From that judgment this appeal is prosecuted.

For appellee (the plaintiff below) the proof, in brief, is as follows: O. B. Bertram testified that when the parties came to his office on November 27, 1905, Dr. Hopper said he was borrowing $2,000 from L. F. Scholl, and wanted to give him a mortgage on the land owned by him on Caney Fork. Mr. Scholl then asked if it could not be drawn so it would appear on its face as a deed, and have an outside writing between him and Dr. Hopper which would make it a mortgage. Witness replied that this could be done, and Mr. Scholl then said he would rather have it that way, as he would feel safer about the money. Several witnesses testified that the value of the land was far in excess of $5,000 at the time the deed was made; that it was worth from $10,000 to $19,000. As to the agreement of August 12, 1907, O. B. Bertram also testified that Mr. Scholl told him, in the presence of Dr. Hopper, that the latter wanted him to have the farm, and the rest of his property to go to his son,

who was in the West; that they wanted to do away with the collateral writing referred to, and let the deed stand as made. This conversation occurred before witness did the writing, and was all the information he had in regard to Dr. Hopper's wishes concerning the collateral writing. Witness read the writings over to Dr. Hopper before he signed them. Dr. Hopper told the witness to fix it right Witness understood from this remark, and from the conversation had with Mr. Scholl in Dr. Hopper's presence, that Dr. Hopper wanted the collateral to be annulled. Witness told Mr. Scholl that, unless a release would change the papers, he knew of no way to do away with the collateral writing and that he did not believe they could change the status of the papers at all.

For appellant (defendant below) the evidence is as follows: The check given at the time the deed was made recited that it was for part payment on the land. Some $400 or $500 was subsequently paid to Dr. Hopper in small sums at various times by checks which recited that they were for part payment on on land. Dr. Hopper also gave receipts to the same effect. On November 25, 1905, Dr. Hopper made a memorandum in writing showing the nature of the contract of sale to be the same as that set forth in the deed and collateral agreement. On November 27th, the same date the deed was executed, he made another memorandum in writing, referring to the execution of the deed and to the terms thereof. In each of these memoranda he referred to the transactions as a sale, and made no reference to the fact that he was a borrower. When Dr. Hopper was called upon to list his property, he stated that he had sold the land to Scholl; and the lat-

ter would list it, while he would list the $3,000 note. Appellant's testimony  as to what  took place at the time the deed was writen is diametrically opposed to that of the witness Bertram. Appellant testified that nothing was said about a mortgage at all: that he simply asked Bertram to draw the deed and the collateral agreement. Appellant also testified that, on the occasion of August 12, 1907, the matter of the agreement was fully talked over in the presence of the witness Bertram and Dr. Hopper, and that he himself did not suggest the terms thereof. There was also testimony to the effect that the purchase price was the reasonable market value of the land.

While there are many elements in the transaction in question which tend to support appellant's theory that the transaction was a conditional sale, and not a mortgage, if we consider the deed and the collateral agreement, and eliminate the evidence of the witness Bertram and of  the appellant  inasmuch as the  one neutralizes the evidence of the other, we are inclined to the opinion that under the decided weight of  authority in this state the transaction in question constituted a mortgage rather than a conditional sale. Oldham v. Halley, 2 J. J. March. 113; Secrest v. Turner,. 2 J. J. Marsh. 471; Ward v. Derring, 2 T. B. Mon. 9; Perkins v. Drye, 3 Dan. 170; Edrington v. Harper, 3 J. J. Marsh. 354, 20 Am. Dec. 145; Honore v. Hutchings, 8 Bush, 691; Bishop v. Rutledge, 7 J. J. Marsh. 217; Thomson's Adm'r v. Campbell's Adm'r, 6 T. B. Mon, 120; Bright & Taylor v. Waygle & Elkin, 3 Dana, 253.  That being the case, we shall next consider the question: What was the effect of the agreement of August 12, 1807?

In Jones on Mortgages, Sec. 338, the rule is thus stated: "By an independent  parol  agreement  the

mortgagor may waive his right under a deed which originally, in effect, was a mortgage, and if this agreement is supported by a consideration, or is partially acted on by the parties, or fully performed, the mortgagor is estopped to deny the grantee's absolute title. The grantee has the legal title already, and the grantor may cut off all right to redeem by a receipt of an adequate consideration thereof, and an informal release of all his interests in the property. * * * A mortgagor who abandons his right to redeem from an absolute conveyance, and elects to treat the conveyance as an absolute deed, instead of a mortgage, is bound by such election and cannot afterwards redeem. In Scanlan v. Scanlan, 134 Ill. 630, 25 N. E. 652, the court said: 'Where a mortgage is in the form of an absolute conveyance, a bona fide argeement between the parties to vest the entire estate in the mortgagee will be sustained and the execution of a formal deed will not be required, provided the transaction is fair, and not attended with oppression or fraud or undue influence, and the mortgagee has not availed himself of his position to obtain an advantage over the mortgagor.' '' In the case of Perkins v. Drye, 3 Dana, 170, the rule is thus stated: "It is not to be denied, that it is competent for the mortgagor to extinguish his right of redemption by conveyance, to the mortgagee; but it must be fairly done, in a transaction that will bear the light, and upon a consideration the particulars of which the mortgagee will be able at least to state, if not to prove." For the purpose of applying the principles above announced we must take into consideration the relation of the parties at the time of the agreement of August 12, 1907. Dr. Hopper apparently realized that his end was near. He felt himself un-

der obligation to appellant for the kindness the latter had shown him. Indeed, he seems to have regarded him almost as his son. It is evidence that he felt there was no one else to whom he owed a greater duty, in view of the fact that he had scarcely known his own child. There is nothing in the record showing that appellant exercised any undue influence over Dr. Hopper. On the contrary, what Dr. Hopper did was the carrying out of his own purposes. There is no proof that he did not understand or appreciate the nature of the document which he signed. Not even appellee's principal witness, the attorney who prepared the agreement, intimates that such was not the case. On the other hand several witnesses testified that Dr. Hopper's mind was clear up to within a few hours of his death; that on the occasion in question he had sufficient mental capacity to know exactly what he was doing. It further appears that Dr. Hopper was a man of independent judgment and decision of character. Not only, then, was there a failure on the part of plaintiff to establish fraud or undue influence, but, on the other hand, appellant affirmatively established that the transaction was fair, and one that would bear investigation.

But it is insisted that there was no consideration for the release of the equity of redemption. At the time Dr. Hopper had been paid, not only the orginal $2000, but some $400 or $500 more. There was due to him the balance on the note of $3,000. By releasing his right to redeem, he not only absolved himself from the obligation to return the money which he had already received, but obtained the right to collect the balance due on the $3,000 note. By the same agreement appellant released his right to collect the money

which he had already paid, and obligated himself to pay the balance due on the $3,000 note. There can be no doubt that this constituted a valuable consideration. Even if we concede that the amount altogether paid by appellant was less than the true value of the land at the time, this fact under the peculiar circumstances of this case, did not make the transaction a fraudulent one, or one without consideration. Appellant and Dr. Hopper were not dealing as strangers. It is evident that each had a high regard for the other. Dr. Hopper wanted appellant to have the land. He wanted to repay appellant for his kindness and services during a long series of years. Under such circumstances the fact that others might be willing to give more for the land is not sufficient to justify the conclusion that appellant, by the influence of his incumbrance, took an undue advantage of Dr. Hopper. We, therefore, conclude that the agreement of August 12, 1907, was binding.

As the rule is, "once a mortgage always a mortgage," the agreement of August 12, 1907, did not have the effect of converting the mortgage into a deed; but it did have the effect of a title bond, and is good by way of estoppel against any one claiming under or through Dr. Hopper. It is also a contract that will sustain an action for specific performance.

For the reasons given, the judgment is reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.

## ON REHEARING.

The court, on its own motion, modifies and extends its former opinion as follows: That part of the opinion holding that the agreement of August 12th, did not have the effect of converting the mortgage into

a deed is withdrawn. Inasmuch as the deed was absolute in form, and was made a mortgage by the collateral agreement, it was within the power of the contracting parties for a valuable consideration to agree that the deed should stand as made. The record shows the appellant has paid to Dr. Hopper and his executor the full amount of the consideration. Appellant, therefore, has a good title to the property.

Judgment reversed, and cause remanded with directions to dismiss the petition.