## Broaddus' Heirs v. Potts, et al.

(Decided November 15, 1910.)

### Appeal from Garrard Circuit Court.

1. State Claims—Delay in Seeking Legal Redress.—There often comes a time when even the best of rights, much less those which are of doubtful character, will by reason of neglect pass beyond the reach of the protecting hand of equity. The law will not permit one after having received a supposed injury to lie by for years until the circumstances connected with it are probably faded from the memory of witnesses to the transaction, or until they have died, or removed from the country, before instituting legal proceedings for redress.

2. Equity Favors the Diligent.—It is the favorite maxim of equity that the law favors the diligent, and not those that sleep on their rights. In this case, appellant, Broaddus, has slept on his rights for half a life time. His claim is too stale to authorize the relief prayed for.

R. H. TOMLINSON, J. A. SULLIVAN and S. M. WALLACE for appellants.

W. J. WILLIAMS for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

On December 23d, 1848, Thomas Royston conveyed 194 acres of land, situated in Garrard county, Kentucky, to Benjamin Schooler, in trust for the sole and separate use of Ann M. Broaddus during her life, with remainder to the heirs of her body. Ann M. Broaddus had five children, one of whom was named Verestus Broaddus, but was commonly known as Bud Broaddus. During the year 1877 Bud Broaddus was charged with several offenses, alleged to have been committed in the counties of Garrard and Lincoln. To defend him in these actions he employed George W. Dunlap, a distinguished attorney of Lancaster, Kentucky. On December 13th, 1877, he executed to George W. Dunlap a deed, by which he conveyed to Dunlap his undivided one-fifth interest in and to the 194 acres conveyed to his mother for life. The material parts of the deeds are as follows:

"Bud Broaddus                    to                    G. W. Dunlap.

### DEED.

"I have employed G. W. Dunlap as my attorney to defend me at the suit of the Commonwealth in the following

cases, to-wit: In the county of Garrard one case on charge of grand larceny, one for petit larceny, two cases for carrying concealed deadly weapons and one for assault and battery and one for an assault; also in the county of Lincoln on alleged charge of murder now pending against me before two justices of the peace for said county sitting as a court of inquiry and for his services already rendered and to be rendered in said cases, I by these presents hereby sell and convey to him my undivided interest in a tract of land in Garrard county, Kentucky, held by my mother Ann M. Broaddus for her separate use and benefit during her natural life and then go to the heirs of her body (here follows a description of the land conveyed), the interest hereby conveyed being one undivided fifth part of said land subject to the life estate of my mother, Ann M. Broaddus, in the whole of said land, and I warrant the title."

The deed was acknowledged by Bud Broaddus before the county clerk of Lincoln county on December 13th, 1877, and was recorded in the office of the clerk of the Garrard county court on December 15th, 1877.

George W. Dunlap died in the year 1880, intestate, and left surviving him as his only heirs at law Eugenia Dunlap Potts, Mary D. Denny, G. W. Dunlap, Jr., W. G. Dunlap and W. O. Dunlap. Eugenia Dunlap Potts, Mary D. Denny, G. W. Dunlap, Jr., and W. G. Dunlap were the only children of George W. Dunlap who survived him. W. O. Dunlap is a son of a deceased son, and a grandson of George W. Dunlap.

On January 14th, 1881, Eugenia Dunlap Potts and the other children of George W. Dunlap, deceased, filed a suit in equity in the Garrard circuit court against W. O. Dunlap and others for the purpose of selling the real estate inherited by them from their father and distributing the proceeds among them according to their respective interests. Judgment was entered directing a sale of all the lands owned by George W. Dunlap, including the undivided one-fifth interest in the 194 acres conveyed to him by Bud Broaddus by the deed of December 13th, 1877. The last named property was purchased by Eugenia Dunlap Potts, Mary D. Denny, G. W. Dunlap, Jr., and W. G. Dunlap. The sale was confirmed by the court and a deed made to the aforesaid parties which was placed upon record in the office of the clerk of the Garrard county court on September 14th, 1882.

Ann M. Broaddus died on November 25th, 1908. On February 18th, 1909, this action was instituted by Mattie Finnell, Verestus Broaddus and others, as heirs of Ann M. Broaddus, against Annie M. Adams and others, for the purpose of having the 194 acres of land in controversy sold and the proceeds divided among them. In this action Eugenia Dunlap Potts and others filed an answer and cross-petition, asking to be made parties. In their answer and cross-petition they set up the deed from Bud Broaddus to their father, and the conveyance by the commissioner of the Garrard circuit court to them, and claimed that they were entitled by virtue of said conveyance to an undivided one-fifth interest in the land in controversy. To this answer and cross-petition the heirs of Ann M. Broaddus filed a reply, charging in substance that Bud Broaddus had employed George W. Dunlap to defend him against certain charges and had agreed to pay him a fee of $100; that he executed a note for this amount, and also the deed in question, which was intended by the parties to be, and was, a mortgage to secure the payment of the note. They then asked that the deed be adjudged to be a mortgage. The issues were completed, proof was heard, and the case submitted to the chancellor, who denied the relief asked by Ann M. Broaddus' heirs, and gave judgment in favor of Eugenia Dunlap Potts and others. From that judgment this appeal is prosecuted.

The evidence for appellants consists of the depositions of two witnesses who were past eighty years of age when they testified. Their testimony is to the effect that they went to Stanford on the occasion when the transaction in question took place, and they understood from the conversation between Bud Broaddus and George W. Dunlap that Broaddus was to pay Dunlap $100 for his services and was to execute a mortgage on his undivided interest in the land in question to secure the payment of the note. One of the witnesses testified that about six months thereafter Ann M. Broaddus paid Dunlap $100, but he did not know what it was paid for. No evidence was taken by appellees. When we consider the fact that George W. Dunlap was a lawyer of extensive practice; that he knew the difference between a deed and a mortgage; that the instrument actually signed by Bud Broaddus was a deed; that there is nothing upon the face of it to show that it was given merely to secure an indebtedness, and that the value of Broaddus' interest in the land

was by no means disproportionate to the value of the legal services rendered him, it is doubtful in the extreme if the evidence, to the effect that the two witnesses referred to understood that the deed was a mortgage, is sufficient to justify us in declaring the deed to be a mortgage.

But, aside from this, there is another consideration which justifies us in denying the relief prayed for by appellants. Bud Broaddus did not have possession of the land in controversy. He made the deed more than thirty-one years before he sought to have it declared a mortgage. In 1881 the land was sold as a part of George W. Dunlap's estate. Certain heirs of George W. Dunlap became the purchasers, and they were charged with the amount of the purchase price in the settlement of the estate. They put their deed to record in 1882. During all the years prior to his mother's death, Bud Broaddus took no steps to have the deed declared a mortgage. Not until his mother died and the time came when the property could be enjoyed did he take such steps. In the meantime, George W. Dunlap had died, and doubtless others who knew of the transaction and who might have testified for appellee either died or moved away. It was then impossible for appellees to produce any testimony to overcome that given by appellants' witnesses. There always comes a time when even the best of rights, much less those of doubtful character, will, by reason of neglect, pass beyond the reach of the protecting hand of equity. The law will not permit one, after having received a supposed injury, to lie by for years, until the circumstances connected with it are probably faded from the memory of the witnesses to the transaction, or until they have died or removed from the country, before instituting legal proceedings for redress. It is a favorite maxim of equity, that the law favors the vigilant and not those who sleep upon their rights. (Maher v. Farwell, 97 Ill., 56.) In this case, appellant Broaddus has slept upon his rights for half a lifetime. His claim is too stale to authorize the relief prayed for.

Judgment affirmed.