# Alcorn et al. v. Superior Oil Corporation et al.

(Decided April 26, 1932.)

Rehearing Denied November 15, 1932.

RICE & RICE and E. E. RICE, BRUCE & BULLITT, D. L. HAZELRIGG, and LEO T. WOLFORD for appellants.

EDWARD C. O'REAR, JOUETT & METCALF, CLARENCE MILLER and HUGH RIDDELL, and C. C. TURNER and MORRIS & JONES for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The appellants are the heirs at law of Armilda Alcorn, who died intestate on August 18, 1900. The appellees are the Superior Oil Corproation, its lessors, and certain holders of royalty interests. The appeal is from a judgment of the circuit court dismissing an action by the heirs of Armilda Alcorn in which they sought to recover a boundary of land in Estill county known as the Horn tract, containing about 80 acres.

The claim of title on behalf of the appellants is thus deraigned:

Caroline Wheeler conveyed certain land to Armilda Alcorn on October 28, 1878. Thereafter, on April 26,

1879, Armilda and her husband, Leroy Alcorn, conveyed the land involved on the appeal to Joseph Blackwell, by a deed absolute upon its face, but which the appellants claim was merely a mortgage to secure a debt of $125, which debt was discharged on April 1, 1880. It is deduced from these facts that Armilda Alcorn died the owner of the land, and that it descended to her heirs at law, subject to an estate by the curtesy in favor of Leroy Alcorn, who survived until April 30, 1919. A plea of limitations on behalf of the adverse claimants is attempted to be avoided by the assertion of an estate by the curtesy in the surviving husband, Leroy Alcorn, which prevented, or at least excused, action during his life. Armilda Alcorn was not affected by limitations because of her coverture. Leroy Alcorn bought the land from Tilman Sharp by a title bond dated July 3, 1900, pursuant to which, on November 25, 1900, a deed was duly executed. It will be noted that Mrs. Alcorn died between those two dates. It is claimed for appellants that Leroy Alcorn was a tenant by the curtesy initiate (as respects the title bond) and a tenant by the curtesy consummate (as respects the deed), and acquired only an adverse outstanding claim which inured immediately to the benefit of his wife, as the holder of the legal title. The title bond, however, did not deal with an alleged or supposed adverse claim. It obligated Sharp to convey "all of my possession, title and claim," and to make "a good warranty deed." The land was the same tract deeded to Sharp by his father on July 22, 1895. The purchaser was not to have possession of the property until the first of the year, 1901, and was not obliged to accept other than a perfect title. On the other hand, the appellees claim title to the land through a deed from Leroy Alcorn, who, as above noted, had acquired it from Tillman Sharp, the vendee of W. A. L. B. Sharp, whose title was derived directly from Joseph Blackwell. It is denied that the deed from Armilda Alcorn and her husband to Blackwell was intended as a mortgage, but, even if it was so intended at its origin, it is insisted that the conduct and attitude of all the parties concerned for a period of more than 20 years thereafter constituted conclusive evidence that Armilda Alcorn had parted with all her right, title, and interest in the land. The burden is upon the appellants to establish their right to recover the land. Fields v. Stamper, 177 Ky. 323, 197 S. W. 919. They must suc-

ceed, if at all, upon the strength of their own title, as in an ejectment suit, and not by reason of any flaws in the armor of their adversaries. Baker v. Campbell, 198 Ky. 424, 248 S. W. 1028; Ison v. Halcomb, 136 Ky. 523, 124 S. W. 813; Bryant v. Ferrell, 196 Ky. 514, 244 S. W. 877; Payne v. Edwards, 188 Ky. 302, 221 S. W. 1073; Turner v. Liebel, 185 Ky. 313, 215 S. W. 70; Stanley v. Griffith, 225 Ky. 36, 7 S. W. (2d) 517.

The first obstacle encountered by the appellants is found in the deed of Armilda and Leroy Alcorn to Joseph Blackwell, conveying the legal title to the land considered in the light of what followed, and coupled with the subsequent conduct of the parties concerned. The entire right of the appellants rests upon their claim as the heirs of Armilda Alcorn, and they stand in her shoes. They can assert no right that she could not have maintained. The conduct of an ancestor affecting the right to reclaim or to recover land constitutes evidence against the heirs, who have at most a mere derivative right. Foust v. Hill, 215 Ky. 366, 285 S. W. 235; Wooton v. Murrell, 134 Ky. 40, 119 S. W. 191; Hargis v. Flesher Petroleum Co., 231 Ky. 442, 21 S. W. (2d) 818.

A deed of conveyance absolute upon its face from their ancestor to Joseph Blackwell was executed on April 26, 1879. By that deed the legal title to the land was vested in the grantee. Even though the legal title was held in trust for the ultimate benefit of the grantors (Spicer v. Holbrook, 66 S. W. 180, 23 Ky. Law Rep. 1812), it was nevertheless vested in the grantee. The heirs seek to avoid the effect of that deed by claiming that it was intended merely as a mortgage. They produce a note bearing the same date as the deed which contains a recital that it was secured by a deed of that date. The lack of evidence pointing to any other explanation justifies us in assuming that the deed to Blackwell, when given, was intended to secure the note. An indorsement on the back of the note bearing Blackwell's name shows that the debt was satisfied on April 1, 1880. From that single circumstance the plaintiffs assume that the deed to Blackwell was extinguished and the legal title to the land restored to Mrs. Alcorn. But the argument assumes entirely too much. A deed absolute upon its face may, in an action for that purpose and upon a proper showing, be declared to be a mortgage. Hobbs v. Rowland, 136 Ky. 197, 123 S. W.

1185, L. R. A. 1916B, 1; Carr v. Morrison, 178 Ky. 683, 199 S. W. 783; Brown v. Spradlin, 136 Ky. 703, 125 S. W. 150. In such a situation the grantor in the instrument has a cause of action, but the title to the land is not automatically restored to the former owner when the debt is paid. It remains in trust, and, unless the rights of innocent third parties have intervened (Fields v. Stamper, 177 Ky. 323, 197 S. W. 919), or other defenses are sustained (Broaddus' Heirs v. Potts, 140 Ky. 583, 131 S. W. 510; Scholl v. Hopper, 134 Ky. 83, 119 S. W. 770), the title may be restored by a decree. But the heirs are affected by the same defects and defenses that would operate to defeat the ancestor. Hence the heirs are not justified in assuming that they inherited the land when they exhibit the canceled note. There are other facts and circumstances that compel consideration and command credence. The note of the Alcorns to Blackwell was surrendered as satisfied twenty-six days before it was due by its own terms, but the deed to the land was retained by Blackwell. If the mere retention of the deed standing alone and unaccompanied by possession was legally insignificant, the continued possession of the land by Blackwell's vendees and the subsequent conduct of the parties respecting it confirm the inference that the deed was kept for the purpose of holding the title. It does not appear how the note was paid. It was competent for the parties to arrange for a deed intended at its inception as a mortgage to stand as a deed. Scholl v. Hopper, 134 Ky. 83, 119 S. W. 770; Cf. Brown v. Spradlin, 136 Ky. 703, 125 S. W. 150. Such an understanding may have been oral, and it may be deduced from circumstantial evidence.

In Jones on Mortgages, sec. 338, the rule is thus stated:

"By an independent parol agreement the mortgagor may waive his rights under a deed which originally, in effect, was a mortgage, and if this agreement is supported by a consideration, or is partially acted on by the parties, or fully performed, the mortgagor is estopped to deny the grantee's absolute title. The grantee has the legal title already, and the grantor may cut off all right to redeem by a receipt of an adequate consideration therefor, and an informal release of all his interests in the property. * * * A mortgagor who

abandons his right to redeem from an absolute conveyance, and elects to treat the conveyance as an absolute deed, instead of a mortgage, is bound by such election and cannot afterwards redeem. In Scanlan v. Scanlan, 134 Ill. 630, 25 N. E. 652, the court said: 'Where a mortgage is in the form of an absolute conveyance, a bona fide agreement between the parties to vest the entire estate in the mortgagee will be sustained, and the execution of a formal deed will not be required, provided the transaction is fair, and not attended with oppression or fraud or undue influence, and the mortgagee has not availed himself of his position to obtain an advantage over the mortgagor.' "

Scholl v. Hopper, 134 Ky. 83, 119 S. W. 770, 773.

It may have been the agreement to give up the note as payment for the land, or the Alcorns may have sold to W. A. L. B. Sharp and caused Blackwell to make the deed direct to him. If the deed was designed merely as a security for the note, the ancestors were entitled, when the debt was paid, to a reconveyance, or at least to a release and return of the deed (mortgage), and to the possession of the land. They obtained neither, and made no claim to either. It is not possible to reconcile the release of the note and the retention of the deed with a restoration of the title to Armilda Alcorn, when she did not then or thereafter take possession of the land, or assert any right to do so. Her acquiescence in the subsequent appropriation and use of the land by others as their own cannot be explained upon any rational ground except that she had disposed of the land, and had no further interest in it. Moreover, Blackwell proceeded at once to act as the proprietor of the land. He put W. A. L. B. Sharp in possession and made him a deed in 1881. The deed from Blackwell contained a warranty against the claims of any and all persons by or through Caroline Wheeler, which amounted to a warranty against the Alcorns whose title was derived from Caroline Wheeler. In the deed from Armilda Alcorn to Blackwell these words appear: "The said Armilda Alcorn and Leroy Alcorn only bind themselves to make just such title to said land as Mrs. Caroline Wheeler made to said Armilda Alcorn." In Blackwell's deed to Sharp it was recited: "The said Sharp holds a bond for a certain tract of land sold him by the party of the first part, condi-

tioned to make the same title that Mrs. Wheeler made to said Blackwell.'' The facts were then fresh, and the Alcorns lived on adjacent land. They had the canceled note in their possession, and knew all the facts, yet asserted no rights, and interposed no objections.

W. A. L. B. Sharp continued to exercise all the rights of ownership for many years in plain view of the Alcorns and with their tacit assent. He conveyed to Tillman Sharp on July 22, 1895, and the latter lived on the land thereafter and used it as absolute owner. Blackwell and the Sharps as his successors in title enjoyed unchallenged ownership and occupancy of the land for 20 years, or more. It is inconceivable that the Alcorns would have submitted silently if the land had been owned by them. They continued to live on adjoining lands and helped to maintain a division fence. Not only so, but in the summer of 1900 Alcorn bought the land from Tillman Sharp at full value, obtaining a fee-simple deed in November of 'that year. Alcorn did not acquire merely an adverse claim. Tillman Sharp was then the sole claimant of the land, and sold the whole title to Leroy Alcorn, binding himself to convey a good title with covenant of general warranty. Indeed, Alcorn's contract of purchase, as heretofore noted, did not bind him to accept anything less than a perfect title. Leroy Alcorn took possession of the land as purchaser of the fee, and did not make or have any claim to it as a tenant by curtesy. One of his sons, at least, was aware of this fact, for he wrote and witnessed the contract between Sharp and Alcorn. Leroy Alcorn knew all the facts, and had in his possession the note surrendered by Blackwell. Yet he made a contract with Sharp, and paid full value for the land. It cannot be assumed, in the face of the facts, with any respect to what we know of human nature, that the Alcorns would have purchased and paid full value for their own land. There is no explanation of the acquiescence of the Alcorns, if the facts had been as the appellants now claim. It is more consonant with reason and experience to presume from the circumstances that some arrangement was made with Blackwell to keep the land and to give up the note, and that what he sold to Sharp was the title to the land. No adverse claim was ever set up by Armilda Alcorn, and it is absurd now to assume that she was the real owner all the time. We do not overlook that Blackwell re-

cited that his title was derived from Mrs. Wheeler when in fact it came through Mrs. Alcorn. But Mrs. Alcorn acquired the land from Mrs. Wheeler, and, since the intermediate transfers of the title were not on record, he may have regarded such reference as appropriate. The scriveners were not expert conveyancers, and all the papers executed were crude and imperfect in form. But, whatever the facts may have been, a title was in truth derived from the Alcorns, and, whatever it was, and from whomsoever he got it, he conveyed all he had to W. A. L. B. Sharp, and warranted the title against any one claiming through Mrs. Wheeler, which included the Alcorns.

The evidential facts as a whole do not warrant us in now treating the deed as a mortgage, when the parties affected did not do so during all those years. We must treat the transaction as did the parties who knew all the facts, and whose conduct must have been consistent with their rights. The fact that the deed was intended as a mortgage at its inception did not require it to remain such, and the subsequent conduct of the parties respecting it completely rebuts the inferences arising from the circumstances surrounding the transaction at its beginning. If Armilda Alcorn and her husband just before her death had sought the relief now demanded by the heirs, recovery necessarily would have been denied. Such a result would have been required by the evidentiary facts which we have marshaled, and by the equitable doctrine of laches in asserting the claim. 19 R. C. L. p. 262, sec. 30.

In Broaddus' Heirs v. Potts, 140 Ky. 583, 131 S. W. 510, 512, where a case similar in principle was presented, relief was denied. In the course of the opinion it was said:

"There is another consideration which justifies us in denying the relief prayed for by appellants. Bud Broaddus did not have possession of the land in controversy. He made the deed more than 31 years before he sought to have it declared a mortgage. In 1881 the land was sold as a part of George W. Dunlap's estate. Certain heirs of George W. Dunlap became the purchasers, and they were charged with the amount of the purchase price in the settlement of the estate. They put their deed to record in 1882. During all the years

350

prior to his mother's death, Bud Broaddus took no steps to have the deed declared a mortgage. Not until his mother died and the time came when the property could be enjoyed did he take such steps. In the meantime, George W. Dunlap had died, and doubtless others who knew of the transaction and who might have testified for appellee either died or moved away. It was then impossible for appellees to produce any testimony to overcome that given by appellants' witnesses. There always comes a time when even the best of rights, much less those of doubtful character, will, by reason of neglect, pass beyond the reach of the protecting hand of equity. The law will not permit one, after having received a supposed injury, to lie by for years, until the circumstances connected with it are probably faded from the memory of the witnesses to the transaction, or until they have died or removed from the country, before instituting legal proceedings for redress. It is a favorite maxim of equity that the law favors the vigilant and not those who sleep upon their rights. Maher v. Farwell, 97 Ill., 56. In this case appellant Broaddus has slept upon his rights for half a lifetime. His claim is too stale to authorize the relief prayed for."

Compare Riley v. Blacker, 51 Mont. 364, 152 P. 758.

If Armilda Alcorn had a cause of action to have the deed declared a mortgage, it was lost long ago and never passed to the appellants. "One who, having an inchoate right to property, abandons it for fourteen years, permits others to acquire apparent title, and deal with it as theirs, and as though he had no right, does not appeal to the favorable consideration of a court of equity. We need only refer to the many cases decided in this court and elsewhere, that a neglected right, if neglected too long, must be treated as an abandoned right which no court will enforce. See, among others, Felix v. Patrick, 145 U. S. 317, 36 L. Ed. 719, 12 S. Ct. 862; Galliher v. Caldwell, 145 U. S. 368, 36 L. Ed. 738, 12 S. Ct. 873, and cases cited in the opinion. There always comes a time when the best of rights will, by reason of neglect, pass beyond the protecting reach of the hands of equity, and the present case fully illustrates that proposition." Moran v. Horsky, 178 U. S. 205, 20 S. Ct. 856, 857, 44 L. Ed. 1038; Cf. Twin-Lick

Oil Co. v. Marbury, 91 U. S. 594, 23 L. Ed. 328, and Wooton v. Murrell, 134 Ky. 40, 119 S. W. 191.

A significant sentence of Judge, now Mr. Justice, Cardozo, in another connection, is pertinent at this point:

"Unreasonable inaction * * * is a token of abandonment, and its significance increases whenever hardship would be done or good conscience offended by a tardily revived activity."

Steuernagel v. Supreme Council, 234 N. Y. 251, 137 N. E. 320, 322. See, also, 19 R. C. L. p. 265, sec. 34.

Mere silence and inaction may not be significant of surrender if resistance is not challenged by a notice of invasion (O'Connor v. Collins, 239 N. Y. 457, 147 N. E. 65), but, when the possession of land is assumed by others under a claim of right, the time for the owner to act has arrived, and unreasonable delay in asserting an adverse right must be regarded as assent to the rightfulness of the possession taken. The conduct of the ancestors of appellants was consistent with a transfer of the title to the land, and it was wholly incompatible with the belated effort to treat the deed as a continuing mortgage. At most, the legal title was held in trust (Spicer v. Holbrook, supra), and all that the grantors had was a cause of action to have the deed declared a mortgage, with the attendant consequences. If they had been in possession of the land, the silence and inaction shown could have been excused (Brown v. Spradlin, 136 Ky. 703, 125 S. W. 150), but, being out of possession, every day that was permitted to pass confirmed the conclusion that their rights had been sold, surrendered, or disposed of in some manner.

The conclusion reached relieves us from considering the question raised respecting the inurement to his wife of the title acquired by Leroy Alcorn. Since her title was conveyed to Blackwell, and not regained from him, neither she nor her heirs acquired any rights in the land when Leroy Alcorn purchased it from Sharp. It follows that the conveyance to Lou Horn by Leroy Alcorn on March 12, 1903, passed a perfect title, and the rights acquired by her lessee were unassailable by the appellants.

The judgment is affirmed.

Whole court sitting.